### FLOYD A. WHEELER v. EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES.[1]

January 2, 1942.

No. 32,937.

[1]Reported in 1 N. W. (2d) 593.

*Alexander & Green* and *Kellogg, Morgan, Chase, Carter & Head-
ley,* for appellant.

*R. H. Fryberger,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Action under the disability provisions of a life insurance policy
to recover monthly disability annuities and a premium paid by
plaintiff on the policy during the period of the alleged disability.
There was a verdict for plaintiff for $3,125.52. Defendant's alter-
native motion for judgment notwithstanding the verdict or a new
trial was denied, and defendant appeals from the judgment entered
upon the verdict.

For about 20 years plaintiff had been president of the Wheeler-
Barnes Company, a corporation manufacturing food products in
Minneapolis, Minnesota. His duties included supervision of the
mixed syrup and molasses department, general office work, corres-
pondence, and tax matters. He called on the jobbing trade in
selling the company's products and made good-will trips which
required him to be out of town two or three days a week. Most
of this traveling was done by automobile. Practically all of his
work demanded the constant use of his eyes.

Plaintiff's eyes began to trouble him prior to May 1938. He
consulted Dr. John F. Curtin, an eye specialist in Minneapolis.
Dr. Curtin found beginning cataracts in both eyes but withheld
this information from him on the advice of a business associate
and because of plaintiff's nervous temperament. In June 1938,
Dr. Curtin first advised plaintiff of the presence of the cataracts,
and the information, according to plaintiff's testimony, had a
demoralizing effect upon him. He began to turn his duties over to
his associates and absorbed himself in an effort to find a cure.

He went to several chiropractors in Minneapolis for electric and heat treatments. He tried medication at a clinic in Marshall-town, Iowa. This had a bad effect upon his general condition. His vision during this time was so limited that he could not discern distant objects. He testified, "I feared total blindness. I could think of nothing but total blindness. I could visualize nothing but two major operations with all the attending tragedies, and it would have naturally a very demoralizing nervous reaction." In January 1939, plaintiff consulted Dr. Oscar B. Nugent, an eye specialist in Chicago. Dr. Nugent surgically removed the crystalline lens of plaintiff's right eye on February 8, and the lens of his left eye on February 21. Plaintiff was discharged from the Chicago hospital on March 22, 1939, and received his first permanent glasses on April 25, 1939. He got his final glasses the latter part of May, but testified that he had vision only through the glasses and that it took him six months to become accustomed to them. He began to resume some of his duties the first of June 1939, going down to the office for about an hour a day. He testified that "there was a nervous reaction that lasted fully a year, which handicapped me in a world of ways."

The policy on which plaintiff brings this suit was issued on October 5, 1925. It contained a total and permanent disability feature providing for monthly disability annuities to be payable upon receipt of due proof, before default in the payment of premiums, of total and permanent disability. It also provided for a waiver of all premiums falling due after receipt of such proof. Total and permanent disability was thus defined in the policy:

"Disability shall be deemed to be TOTAL when it is of such an extent that the insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such TOTAL DISABILITY shall be presumed to be PERMANENT when it is present and has existed continuously for not less than three months; * * *""

The insurer reserved the right to require proof of the continuance of such total disability at any time or times during the first two years after receipt of due proof, but thereafter, not more than once a year.

The first notice furnished defendant of plaintiff's disability was a letter written by plaintiff on July 8, 1939. Defendant refused to allow the claim or furnish blanks for the submission of proof. Plaintiff then brought this action, on the theory that it was reasonably impossible for him to give notice earlier. He procured a verdict for monthly disability annuities covering the entire period of total disability excepting the first three months. The jury, in answer to interrogatories submitted by the court, found (1) that total disability commenced June 15, 1938; (2) that total disability ceased June 1, 1939; (3) that it was reasonably impossible for plaintiff to furnish notice to the company within ten days after the first 90 days of total disability; and (4) that notice was furnished by the plaintiff as soon as was reasonably possible.

■ Notice of disability was first furnished to the defendant July 8, 1939, 38 days after the date the jury found total disability ceased. It is settled law in Minnesota that in this type of policy receipt of proof (or notice) of disability is a condition precedent to the insurer's obligation to pay disability benefits and that the obligation exists only as to monthly disability benefits falling due after receipt of such proof. Floyd M. Andrews, Inc. v. Aetna L. Ins. Co. 198 Minn. 1, 268 N. W. 415, 106 A. L. R. 1085; Berke v. New York L. Ins. Co. 208 Minn. 210, 293 N. W. 248; Lindskog v. Equitable L. Assur. Soc. 209 Minn. 13, 295 N. W. 70.

However, the standard provisions of the health and accident code, Mason St. 1927, §§ 3417(4)(C)4 and 3417(5)5, must be read into the disability provisions of the life insurance policy here involved.[2] Joyce v. New York L. Ins. Co. 190 Minn. 66, 250 N. W. 674, 252 N. W. 427. Section 3417(4)(C)4 provides:

[2]L. 1935, c. 74, Mason St. 1940 Supp. § 3426(2), has apparently made this code inapplicable to policies like the one in suit.

"Written notice of injury or of sickness on which claim may be based must be given to the insurer within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness."

Section 3417(5)5 provides:

"Failure to give notice within the time provided in this policy. shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

Defendant earnestly contends that the standard provisions of §§ 3417(4)(C)4 and 3417(5)5 do not affect this case because, receipt of proof (or notice) of disability being a condition precedent to defendant's obligation and not having been given during the continuance of disability, no "claim" ever arose in favor of plaintiff. The argument is that where no claim arises until receipt of notice, failure to give such notice (or proof) does not invalidate an existing claim, for one has never been created.

Defendant's argument assumes that "claim" as used in this provision of the statute is synonymous with "cause of action." True, it may be used in that sense, and in some statutes such as our probate code, it may be given an even more limited meaning; but ordinarily it is a broad, comprehensive word embracing every specie of legal demand. Knutsen v. Krook, 111 Minn. 352, 357, 127 N. W. 11, 20 Ann. Cas. 852. It has been held to include valid and invalid claims. Home Ins. Co. v. Watson, 59 N. Y. 390. It may be used in the sense of an assertion or pretension. Sheldon v. Gage County Society of Agriculture, 71 Neb. 411, 413, 98 N. W. 1045. In the statute under consideration, since the word "claim" is immediately preceded by the word "any," we, must give it the broadest possible construction. The legislature has said "any claim," and if some claims may be invalid or mere assertions, as they may, the legislature by saying "any" manifested an intention to include them as well as the valid ones. Moreover, this provision of the statute is to be read into the policy and construed

liberally in favor of the insured. Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737. If the construction contended for by defendant were to be taken as expressing the legislature's intention, this provision would have a very restricted application to disability provisions of life policies. In addition, the situation of the insured would seem harsh indeed, for he would then be unable to receive the protection he had paid for because of the occurrence of the very risk insured against.

In some jurisdictions, without the aid of a statute, the common-law rule has been applied, that impossibility may excuse performance of a condition precedent where the condition does not form a material part of the bargain, being one merely relating to the giving of prompt notice or proof. McCoy v. New York L. Ins. Co. 219 Iowa, 514, 258 N. W. 320; Mutual L. Ins. Co. v. Johnson, 293 U. S. 335, 55 S. Ct. 154, 79 L. ed. 398; Swann v. Atlantic L. Ins. Co. 156 Va. 852, 159 S. E. 192; Rhyne v. Jefferson Standard L. Ins. Co. 196 N. C. 717, 147 S. E. 6. We are not called upon to decide whether these cases would be followed in Minnesota, but their reasoning demonstrates the need for reaching the result that may be reached in this case by a liberal construction of our statute. We conclude that the word "claim" as used in the statute is broad enough to include an assertion of a right to disability benefits; and, since the invalidity of that assertion or claim results from precisely the situation covered by the statute, failure to give such notice, plaintiff may recover as if he had furnished notice within the first ten days after the first three months of total disability if it was not reasonably possible to furnish notice during those first ten days and notice was furnished as soon as was reasonably possible.

■ Defendant contends that the policy insures only against total and actually permanent disability and that where it was conclusively established by plaintiff's recovery before trial that the total disability was not actually permanent, he is not entitled to disability benefits. We think this case is controlled by Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737, and Bahne-

man v. Prudential Ins. Co. 193 Minn. 26, 257 N. W. 514, 97 A. L. R. 121. The policies considered in those cases were held to include in their coverage the appearance of permanent disability as well as actually permanent disability. Defendant attempts to distinguish the Maze and Bahneman cases on the ground that in the present case the insurer has inserted in the policy a presumption in aid of proof and that this presumption harmonizes the provisions of the policy which were found inconsistent in the Maze and Bahneman cases. We fail to agree with defendant's position. The same inconsistency that was found by this court to exist between insuring against only actually permanent disability and still requiring proofs from year to year of the continuance of disability is present in this case. The presumption in aid of proof is no doubt rebuttable, as defendant argues; but, since the policy insures against apparent as well as actually permanent disability, it may well be employed to prove the apparent permanency of the disability. Obviously, since plaintiff has recovered, there could be no presumption that he was permanently disabled in the literal sense.

■ Defendant also assigns as error the action of the trial court in submitting to the jury the question whether notice was given as soon as was reasonably possible. The requirement that notice be given as soon as reasonably possible has been held by the vast majority of courts to mean that notice must be given in a reasonable time considering all the facts and circumstances of the case. Sleeter v. Progressive Assur. Co. 191 Minn. 108, 253 N. W. 531; Metropolitan Cas. Ins. Co. v. Johnston (3 Cir.) 247 F. 65, 7 A. L. R. 175; Lyon v. Railway Passenger Assur. Co. 46 Iowa, 631; Everson v. General Acc. F. & L. Assur. Corp. Ltd. 202 Mass. 169, 88 N. E. 658; cf. Beeler v. Continental Cas. Co. 125 Kan. 441, 265 P. 57; Hughes v. Central Acc. Ins. Co. 222 Pa. 462, 71 A. 923. The question is ordinarily one of fact for the jury unless the circumstances "disclose nothing by way of extenuation or excuse." Hughes v. Central Acc. Ins. Co. 222 Pa. 465, 71 A. 924. The testimony in the present case is such that varying inferences may be

drawn as to whether plaintiff furnished notice within a reasonable time, and therefore it was properly left to the jury. London G. & A. Co. v. Leefson (3 Cir.) 37 F. (2d) 488.

The judgment must be affirmed.

STONE, JUSTICE (dissenting).

To me it seems that as matter of law this should be held a case of mere forgetfulness on the part of insured rather than one of impossibility, reasonable or otherwise, of his giving the timely notice of disability which the policy makes prerequisite to his right of action.

LORING, JUSTICE (dissenting).

I agree with Mr. Justice Stone's remarks. If the views of this court previously expressed result in injustice to policyholders, the legislature should provide standard provisions for policies of this character which will protect policyholders.

