GLADYS A. OLSON v. E. J. EVERT.[1]

August 29, 1947.

No. 34,395.

*Henry L. Soderquist, Fred Ossanna,* and *Bauers & Carlson,* for appellant.

*Neumeier & Harrigan* and *Lyle J. Eckberg,* for respondent.

[1]Reported in 28 N. W. (2d) 753.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial, made following a directed verdict for defendant at the close of the trial.

The action was for damages for personal injuries suffered by plaintiff when hit by an automobile at the intersection of Myrtle and Sixth streets in the city of Stillwater on December 31, 1944, at approximately 9:00 p. m. Sixth street, running north and south, comes to a "dead end" at Myrtle street and forms a "T" intersection. There is a sharp downgrade on Myrtle street from west to east, and on the night of the accident the street was covered with light snow, pounded down on the tarvia surface by traffic so as to result in a slippery and somewhat icy condition.

On the evening in question, plaintiff, 24 years of age, accompanied by her sister Lucille and their friends Ethel and Mavis Swanson, June Sandberg, and Lillian Anderson, was walking east along Myrtle street from the Swanson home, located approximately six blocks west of the scene of the accident. Arm in arm and abreast, the girls were walking in the south lane of Myrtle street (44 feet, 4 inches wide), with plaintiff approximately six to eight feet from the south curb thereof. Apparently the girls made no effort to walk on the sidewalk prior to reaching the intersection of Myrtle and Sixth, nor did they try to walk along the north side of the street, although it was conceded that they could have done so with no more difficulty than they encountered when walking along the south side.

It was dark at the time of the accident, except for the light from a street lamp which extended over the intersection on an arm from a post situated at the southwest corner of the intersection. As the girls approached Sixth street, they started to walk toward the southeast corner of the intersection. When plaintiff was a short distance from the curb on the southeast corner of the intersection, she was struck by a car operated by defendant's son, who was traveling east on Myrtle street toward the Stillwater bus depot. She was seriously injured.

Plaintiff contends that the trial court erred in granting defendant's motion for a directed verdict at the close of all the testimony.

A verdict may be directed only in those unequivocal cases where it clearly appears to the court that it would be its manifest duty to set aside a contrary verdict as not justified by the evidence or as contrary to the law applicable to the case. A motion for a directed verdict presents a question of law only. It admits, for the purposes of the motion, the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. 6 Dunnell, Dig. & Supp. § 9764. On a motion for a directed verdict, that view of the evidence most favorable to the adverse party must be taken. Dreyer v. Otter Tail Power Co. 205 Minn. 286, 285 N. W. 707, 287 N. W. 13; Reiton v. St. Paul City Ry. Co. 206 Minn. 216, 288 N. W. 155; Salters v. Uhlir, 208 Minn. 66, 292 N. W. 762. The case is one for the jury where the testimony is such that varying inferences may be drawn. Wheeler v. Equitable L. Assur. Society, 211 Minn. 474, 1 N. W. (2d) 593. On review of a directed verdict for defendant, the evidence will be considered in the light most favorable to plaintiff. Johnson v. Theo. Hamm Brg. Co. 213 Minn. 12, 4 N. W. (2d) 778. A verdict directed on the sole ground of contributory negligence will be upheld, although the finding of contributory negligence as a matter of law is not sustained, provided there is nothing to sustain a finding of negligence. Mix v. City of Minneapolis, 219 Minn. 389, 18 N. W. (2d) 130.

■ The trial court, in granting defendant's motion for a directed verdict, appears to have done so on the ground that plaintiff, who was walking along the south part of Myrtle street, was contributorily negligent as a matter of law. In support of its position, the trial court refers to Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409. It was there held, in an opinion written by Mr. Justice Stone, that a pedestrian struck while walking in the wrong lane of a divided highway, *with* rather than *against* traffic, was *"prima facie* guilty of negligence," and that, the prima facie case being unopposed by any evidence excusing decedent's presence on the wrong lane of the highway, a verdict for defendant motorist was properly

directed. The statute there construed is now M. S. A. § 169.21, subd. 5, and reads as follows:

"Pedestrians when walking along a roadway shall walk near the left side of the roadway, giving way to oncoming traffic."

Plaintiff argues that even though this statute is said to be controlling here a jury issue was presented because of evidence to the effect that the girls intended to go upon the sidewalk on the south side of Myrtle street as soon as they reached a place where it was shoveled, and that in order to prevent their crossing Myrtle street twice they walked along the south side of the street near the curb line. Plaintiff also calls attention to evidence indicating that it was customary for people to walk in the street down the hill on Myrtle street and to go up on the sidewalk at the same point where these girls were mounting the sidewalk at the time of the accident. The evidence in the record relating to the position of the girls on the roadway at the time of the collision is of considerable importance. Plaintiff testified that as the six girls approached the southwest corner of the intersection they were walking "diagonally one behind the other" and "not stretched out into the street but more or less up and down the hill." She was four or four and one-half feet from the curb when struck, according to her testimony, while June Sandberg, immediately ahead of her, was three or three and one-half feet away from it. Lillian Anderson was "about two feet" from the curb, while Mavis Swanson, about three or four inches therefrom, was directly behind and touching Lucille Olson, who had stepped up on the curb just behind Ethel Swanson. Ethel had passed the curb line and was "way up over on the other side of the sidewalk." The girls were entering upon the south sidewalk of Myrtle street at a point directly in line with the east sidewalk of Sixth street extended.

The testimony of plaintiff was fully corroborated by the physical facts and the recollections of the other girls. George Guldan observed tracks traceable to defendant's car close to the south curb line of Myrtle street—a distance of six feet, according to his estimate. June Sandberg thought that three of the girls were on the

sidewalk at the time of the accident, "because we were right behind them and we were about to get up on the curb." Lillian Anderson said that at the time of the collision her arm was linked with that of June, who was behind her, and that she (Lillian) was so close to Mavis Swanson, just ahead, that "her left shoulder was touching my right shoulder." Mavis agreed that at the moment in question (and as she was "just three or four inches from the curb") Lillian was very close to and was touching her. Lucille Olson recalled that "when we got by the southwest corner of Sixth street we decided to walk over onto the sidewalk, and so we angled off towards the southeast corner and had started to mount the sidewalk there," and "I was there second and I had one foot up first and the other one almost up when I heard the bump." Ethel Swanson was then, according to her own recollection, "well over on the sidewalk when I heard this crash" about "three or three and a half" feet from the curb.

The case of Shore v. Minter, 160 Minn. 215, 199 N. W. 744, is somewhat similar to the instant one. There, plaintiff was struck by defendant's car while standing with one foot in the street and one foot on the curb. She had been standing in that position for some minutes conversing with friends before she was struck. It was argued that one who takes such a position as plaintiff did on the edge of a busy thoroughfare such as Lyndale avenue in Minneapolis was guilty of contributory negligence as a matter of law, but the court held that the questions of defendant's negligence and plaintiff's contributory negligence were for the jury.

The trial court in its memorandum quotes M. S. A. § 169.21, subd. 5, *supra*, and also § 169.01, subd. 31, which defines a roadway as "That portion of a highway improved, designed, or ordinarily used for vehicular travel." The court admitted in its memorandum that the accident occurred in the intersection, but concluded "that the accident took place on the 'roadway' and on that part of the roadway where plaintiff should not have been walking." The court relied on Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409, *supra*, as decisive. We believe that the facts in the Wojtowicz case

differ considerably from those here. In the former case, decedent was walking after dark on the Point Douglas road near Battle Creek on the southerly outskirts of St. Paul. There were two roadways, one on the east side for northbound traffic, and the other on the west side for southbound traffic, divided by a wide parkway or mall. When struck by defendant's car, decedent was walking north at about the center line of the northbound roadway. This court in that case said that the law requiring pedestrians to "walk near the left side of the roadway, giving way to oncoming traffic," applied to a divided highway such as the Point Douglas road. It also held that decedent's conduct, whether negligent or not, was the proximate and contributing cause of the accident.

In the instant case, we believe that we have a different situation from the ordinary roadway case. Here, the accident actually occurred in an intersection. The area within which plaintiff was struck was an intersection, even though Sixth street terminated at Myrtle street. See, Holman v. Ivins, 150 Minn. 285, 184 N. W. 1026, 21 A. L. R. 964. Although it can be said that plaintiff was struck while walking along the south side of Myrtle street, it would be as accurate to say that she was injured while crossing the intersection formed by Myrtle and Sixth streets. From the record, there appears to be no question that she was struck while in the southeast quarter of the intersection of Myrtle and Sixth streets and while she was walking diagonally in a southeasterly direction toward the curb and sidewalk on the south side of Myrtle street and the east side of Sixth street. If the testimony is correct that she was so walking, it might be said that she was walking as much against the traffic so far as Sixth street was concerned as she was walking with the traffic so far as Myrtle street was concerned.

We have also considered the possibility that plaintiff might have been held guilty of contributory negligence as a matter of law because of her failure to keep a proper lookout while crossing the intersection. However, the record indicates that prior to the accident plaintiff had been able to observe the approach of other vehicles from behind her because of the fact that the lights of such vehicles were

shining in an easterly direction along the road. She observed no such indication of the approach of defendant's car. She apparently made some effort to look behind her for traffic as she entered the intersection, and it is clear from the testimony that neither she nor any of the other girls were warned by horn or other signal from defendant's automobile. In Bruce v. Cohn, 172 Minn. 386, 215 N. W. 520, it was held that a pedestrian had the right to assume that automobiles coming from her rear and turning into the street she was crossing would give warning of their approach. There is testimony in the record indicating that the lights on defendant's automobile were in a defective condition immediately after the accident occurred. The fact that the lights of a vehicle approaching an intersection were dim was considered, among other things, a question for the jury in determining whether plaintiff was guilty of contributory negligence in Johnson v. Brastad, 143 Minn. 332, 173 N. W. 668.

We believe that the important question in the case before us is whether plaintiff had a right to be where she was in the intersection at the time she was struck, regardless of how she reached that place. We have examined many cases in connection with street and highway accidents, and we refer to some of them.

In Johnson v. Schuler, 152 Minn. 137, 188 N. W. 271, plaintiff came down from the north on Ilion avenue in Minneapolis to take an eastbound streetcar approaching from the west. Its stopping place was east of the first avenue west parallel with Ilion. Plaintiff, who started diagonally across the street and westerly to reach the stopping place, was struck by an automobile coming from the east. This court held (152 Minn. 138, 188 N. W. 272):

"It was not necessarily negligent for the plaintiff to go across the street at a place other than a regular intersection. Bolstad v. Armour & Co. 124 Minn. 155, 144 N. W. 462; Stallman v. Shea, 99 Minn. 422, 109 N. W. 824. He was required to exercise ordinary care in his movements. So was the driver of the auto. Neither had an absolute right of way. * * * The negligence of each was a question of fact; * * *."

In Flaaten v. Lyons, 157 Minn. 362, 196 N. W. 478, plaintiff's decedent was killed in the act of crossing Superior street in Duluth when struck by defendant's car. Defendant contended that no actionable negligence was shown as to him and that decedent's contributory negligence appeared as a matter of law. This court held that decedent was not necessarily negligent as a matter of law if he deviated from the path made by projecting the lines of the easterly sidewalk on Fifth avenue across Superior street. The trial court there charged the jury that decedent was guilty of contributory negligence if he violated the city ordinance forbidding pedestrians to cross a street at any other place than in the path that would be occupied by the sidewalks of the intersecting street if extended. This court said (157 Minn. 364, 196 N. W. 479) :

"* * * This is not the law. The ordinance was not enacted for the protection of the one who negligently injures the pedestrian. Violation of such an ordinance or statute by the injured person has never been held contributory negligence as a matter of law. Day v. Duluth Street Ry. Co. 121 Minn. 445, 141 N. W. 795; Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275."

In Hollander v. Dietrich, 181 Minn. 376, 378, 232 N. W. 630, 631, this court held:

"* * * The plaintiff was not negligent as a matter of law because she crossed at a point other than a street crossing. Tobisch v. Villaume, 164 Minn. 126, 204 N. W. 568; Johnson v. Schuler, 152 Minn. 137, 188 N. W. 271 [*supra*]; * * *."

In Saunders v. Yellow Cab Corp. 182 Minn. 62, 64, 233 N. W. 599, 600, this court said:

"Generally, where a pedestrian is run into and injured by an automobile upon a public street or highway, the issues of the negligence of the driver and the contributory negligence of the person injured are questions of fact for the jury. Particular facts and circumstances, conclusively shown, may make one or both issues questions of law for the court. [Citing cases.]

"The undisputed fact that plaintiff was crossing the street in the middle of the block or at a place not on a crossing or cross-walk intended for pedestrians did not absolve the cab driver from his duty to exercise ordinary care. [Citing cases.]"

In Peterson v. Miller, 182 Minn. 532, 535, 235 N. W. 15, 17, the action was brought by the mother and natural guardian for injuries to her 15-year-old daughter. The question was whether the injured girl was guilty of contributory negligence or fault or delinquency in not observing the statute so as to prevent a recovery. The uniform highway act of 1927, there cited, provided as follows:

"Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right of way to vehicles upon the highway."

In referring to this statute, the court said (182 Minn. 536, 235 N. W. 17):

"Recently in considering this statute in Saunders v. Yellow Cab Corp. 182 Minn. 62, 64, 233 N. W. 599, 601, the court, by Mr. Justice Olsen, said:

" 'The fact that plaintiff was on a part of the street where it was the duty of pedestrians to yield the right of way to automobiles, under 1 Mason, 1927, § 2720-18(c), did not make plaintiff guilty of contributory negligence as a matter of law. [Citing cases.] Whether plaintiff was negligent in failing to watch for approaching cars was for the jury.' "

In Naylor v. McDonald, 185 Minn. 518, 241 N. W. 674, the plaintiff was struck and injured by defendant's automobile while she was walking across the street on or near the crosswalk at the intersection of two of the main streets of the city of Bemidji. There was a dispute as to whether plaintiff was on the crosswalk or a few feet outside. The evening was dark and muggy, but the street intersection was well lighted. Plaintiff had been on the crosswalk and had proceeded considerably more than halfway across the street when struck. Defendant testified that he did not see plaintiff until just

as the car struck her. Defendant had been approaching the cross-walk during that time. This court said (185 Minn. 520, 241 N. W. 676):

"* * * If he did not see her during that time, he would no more have seen her if she had been exactly on the cross-walk when struck. The accident, so far as defendant is concerned, would have happened just as surely if plaintiff had been on the cross-walk, perhaps an instant sooner. We think there was no basis for an assumption by defendant that a person he did not see or know to be there would yield him the right of way. The statute does not prohibit pedestrians from being upon or crossing streets at places other than on cross-walks. But a pedestrian so upon the street must exercise due care and yield the right of way to automobiles lawfully approaching him on the street. That does not absolve the driver of such an automobile from the duty of exercising due care to prevent injury to persons on the street at all times and places. The driver of an automobile cannot justify running into or over a pedestrian on the street by merely showing that the accident occurred at a place where he had the right of way."

In Heikkinen v. Cashen, 183 Minn. 146, 148, 235 N. W. 879, 880, this court said:

"* * * It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question of contributory negligence becomes one of law. [Citing cases.] The fact that decedent was not on a cross-walk does not in itself constitute contributory negligence as a matter of law."

Mr. Justice Holt in Stoneman v. Washburn-Crosby Co. 153 Minn. 331, 333, 190 N. W. 605, 606, stated:

"* * * Drivers of automobiles must have in mind that people do walk in the street at other places than on the crosswalks and sidewalks. No part of the street is forbidden the pedestrian, as a matter of law. But, of course, a pedestrian in the street at other

places than the crossings and sidewalks should use care commensurate with the danger that drivers of vehicles anticipate less travel on foot there."

In Reier v. Hart, 202 Minn. 154, 277 N. W. 405, plaintiff was walking on the west sidewalk of South Second street in Stillwater, in a southerly direction toward the intersection of that street with East Chestnut street, which runs east and west. When he was seven or eight feet from the north curb of East Chestnut street, he testified that he looked to his right and saw defendant's automobile approaching on East Chestnut street, about 40 feet away, traveling about 25 miles an hour on the right (south) side of East Chestnut. He looked to the east of the intersection and saw no cars approaching on East Chestnut. He looked behind him to the north on South Second street and saw no cars approaching on that street. He then stepped from the sidewalk into the street and headed diagonally across the intersection toward the southeast corner. When he had taken three steps and was about nine feet from the northwest curb corner of the intersection, he again looked to the right, according to the testimony, and saw defendant's car, which had turned left from East Chestnut street, some two or three feet from him. He was injured when struck by the fender of defendant's car. Defendant claims that he was traveling only about 15 miles an hour as he approached the intersection, and that when he turned the corner to go north on South Second street and struck plaintiff his car was 15 feet from the northwest corner of the intersection. Plaintiff did not hear any horn, and defendant testified that he did not remember whether he sounded his horn or not. It was dark and misty at the time of the accident, and defendant's car lights were on. The court said that there was evidence to sustain a finding of negligence on the part of defendant, but that plaintiff was not guilty of contributory negligence as a matter of law. The court said further (202 Minn. 156, 277 N. W. 406):

"* * * Plaintiff was bound to exercise ordinary care for his own safety. A pedestrian about to cross a street must use the care

of a prudent man, but the law does not undertake to further define this standard. The question in each particular case is whether or not the plaintiff, considering all the facts and circumstances, exercised due care. In this connection it is important to bear in mind that the plaintiff was where he had a right to be, Saunders v. Yellow Cab Corp. [182 Minn. 62, 233 N. W. 599] *supra;* note, 14 A. L. R. 1176; * * *.

"* * * The law has not fixed any hard and fast standard defining the duties of pedestrians crossing streets. Negligence of a pedestrian is not determined by the number of times he looked. The law does not say how often he must look or when or from where. If observation is made before entering the street, failure to look the second time while crossing the street is not necessarily contributory negligence as a matter of law. [Citing cases.] * * * A pedestrian is not required to look continuously in any particular direction. * * *

"It was for the jury to say whether under all the circumstances plaintiff was guilty of contributory negligence. It was error for the court below to hold that plaintiff was guilty of contributory negligence as a matter of law."

We conclude that under the circumstances of this case, where plaintiff was in the intersection, where she appears to have had a right to be regardless of how she approached the intersection, the issue of her contributory negligence in having failed to observe defendant's automobile prior to the time of the collision was for the jury.

■ We also feel that there was sufficient evidence to warrant the trial court in submitting to the jury the issue of defendant's negligence. Although the street was undoubtedly quite slippery at the time of the accident, this was a factor which defendant should have had in mind as he proceeded down the incline of Myrtle street toward the downtown section of Stillwater. Here was a situation where six young ladies, including plaintiff, were walking one ahead of the other diagonally in an intersection, approaching a curb and walk, and where defendant motorist claims that he did not see them until he was approximately ten feet away from them. He conceded

that under normal circumstances and with a proper lookout he could have seen the girls when they were 100 feet away, but claimed that the lights of a car approaching from the opposite direction blinded him. Assuming this to be the situation, it would appear that the jury could reasonably conclude that it was negligent for defendant to enter an intersection at a time when he was so completely blinded by the bright lights of an approaching car. Further, the testimony of plaintiff and three of the other girls to the effect that, although they had ample occasion for observation, they did not see any car approaching from the opposite direction raises the question as to the exact effect which these *bright lights* may have had. Although defendant claimed that he entered the intersection at a speed of approximately ten miles an hour, there is evidence in the record which indicates that one of the three girls struck by defendant's car was thrown about 120 feet and another about 50 feet. It further appears that after the collision defendant's car proceeded a considerable distance to the east, stopping at the north curb, and under all the circumstances the jury might reasonably have concluded that he was traveling at a speed greater than was reasonable and prudent under the circumstances. There was also evidence in the record indicating that immediately after the accident defendant's car was examined and the brakes and battery found to be defective. The car was a 1935 Ford, and the jury might well consider whether repairs made on the car prior to the accident had put it in a safe condition at the time of the accident.

After carefully considering all phases of this case, we believe that the issues of negligence and contributory negligence should have been submitted to the jury by the trial court, and for that reason we conclude that the order denying plaintiff's motion for a new trial was erroneously made.

Order reversed.

PETERSON, JUSTICE (concurring specially).

I concur in the result.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.