**MARYLAND CASUALTY COMPANY, Appellant,**

v.

**Paul HARVEY, Respondent.**

**No. CX–91–258.**

Court of Appeals of Minnesota.

Aug. 13, 1991.

Review Denied Oct. 11, 1991.

---

Sandra J. Ferrian, Minneapolis, for appellant.

Walter E. Sawicki, Jr., Maplewood, for respondent.

Considered and decided by RANDALL, P.J., and NORTON, and MULALLY,* JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

## OPINION

NORTON, Judge.

Appellant, Maryland Casualty Company (Maryland Casualty), commenced this declaratory judgment action in June 1990 seeking a determination that respondent Paul Harvey's failure to attend an independent medical examination precluded payment of basic economic loss benefits. The trial court denied Maryland Casualty's motion and held that the reasonableness of Harvey's refusal to attend the independent medical examination constituted a factual dispute subject to arbitration. The trial court ordered arbitration. Maryland Casualty appeals. We affirm.

## FACTS

On July 27, 1989, Harvey was involved in an automobile accident. Harvey held an automobile insurance policy with appellant Maryland Casualty which provided liability, uninsured, underinsured, and personal injury protection benefits.

On November 1, 1989, Harvey submitted a claim for chiropractic treatment. On November 15, 1989, Maryland Casualty sent Harvey's attorney a letter setting an independent medical examination for December 21, 1989.

Harvey's attorney responded with a letter dated November 21, 1989. Harvey's attorney stated that Harvey would not attend the examination unless the following conditions were met:

(1) payment of all outstanding medical bills;

(2) attendance at the exam of a third person selected by Harvey;

(3) permission to take notes and/or record exam;

(4) limit the examining physician to one x-ray or CT scan;

(5) limit time, place, manner, and scope of examination; and

(6) payment of all mileage and wage loss expenses arising from the examination.

Maryland Casualty agreed to pay mileage, expenses, and lost wages incurred. Maryland Casualty also indicated that it was continuing to evaluate previously submitted bills. However, Maryland Casualty rejected Harvey's other proposed conditions and asserted a statutory right to an unconditional examination.

Harvey did not attend the examination and Maryland Casualty subsequently terminated Harvey's no-fault benefits. Harvey filed for arbitration pursuant to Minn. Stat. § 65B.525. While arbitration was pending, Maryland Casualty filed a complaint for declaratory judgment, contending that Harvey's failure to attend the examination precluded him from receiving basic economic loss benefits.

## ISSUES

1. Does the reasonableness of a no-fault insured's refusal to attend an independent medical examination constitute a legal question for the court's resolution or a factual dispute subject to arbitration?

2. Does Harvey's refusal to attend the independent medical examination preclude him from recovering basic economic loss benefits?

3. Is Harvey entitled to attorney fees?

## ANALYSIS

1. *Legal/Factual Distinction*

The threshold issue is whether disputed conditions placed upon an independent medical examination pursuant to Minn.Stat. § 65B.56, subd. 1 (1990) present a legal or factual issue. The trial court held that "reasonableness" of the parties' positions must be arbitrated and dismissed Maryland Casualty's motion.

In no-fault arbitration, to assure consistent interpretation of the No–Fault Act, arbitrators decide only issues of fact, and interpretation of law is left to the courts. *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn. 1988). An arbitrator's findings of fact are final. *Id.* at 422. This court reviews legal questions de novo. *Castor v. City of Minneapolis*, 429 N.W.2d 244, 245 (Minn.1988).

*Johnson's* progeny have held that coverage issues based upon undisputed facts or

facts resolved by an arbitrator constitute legal issues. *See Erickson v. Great Am. Ins. Co.,* 466 N.W.2d 430, 432 (Minn.App. 1991) (proper calculation of income loss benefits is a legal issue); *see also Vieths v. Illinois Farmers Ins. Co.,* 441 N.W.2d 575, 576–77 (Minn.App.1989) (coverage question on undisputed facts presented a legal issue), *pet. for rev. denied* (Minn. Aug. 15, 1989).

Minn.Stat. § 65B.56, subd. 1 provides, in pertinent part:

> Any person with respect to whose injury benefits are claimed under a plan of reparation security shall, upon request of the reparation obligor from whom recovery is sought, submit to a physical examination by a physician or physicians selected by the obligor *as may be reasonably required.*
>
> The cost of any examination requested by the obligor shall be bore entirely by the requesting obligor. * * * Obligors are authorized to include *reasonable* provisions in policies for mental and physical examination of those injured persons.
>
>    \*    \*    \*    \*    \*    \*
>
> * * * If the claimant refuses to cooperate in responding to requests for examination and information as authorized by this section, evidence of such non-cooperation shall be admissible in any suit or arbitration filed for damages for such personal injuries or for the benefits provided by sections 65B.41 to 65B.71.

(Emphasis added.)

Maryland Casualty argues this case is merely one of statutory construction and the statute requires the insured's cooperation with an unconditional examination. Maryland Casualty and the dissent argue that an arbitrator's resolution of "reasonableness" questions would create vastly divergent results.

■ As a matter of law, we reject Maryland Casualty's argument that an insurer is statutorily entitled to an unconditional independent medical examination. Maryland Casualty's interpretation ignores the statute's limitation of " * * * as may reasonably be required." Minn.Stat. § 65B.56, subd. 1. The statute imposes a standard of reasonableness on the entire scope of an independent medical examination. For example, an insurer may not require an unreasonably invasive examination procedure unrelated to the insured's claimed injury.

Having decided that Maryland Casualty is not entitled to an unconditional examination, we now consider who should decide the reasonableness of a disputed independent medical examination. We conclude that the reasonableness of an independent medical examination presents unique factual issues better left for an arbitrator's resolution.

■ In contrast with the *Johnson* cases, this case involves disputed factual issues. The parties dispute the reasonableness of Harvey's proposed conditions under the facts of this case. In other contexts, our courts have held that "reasonableness" presents unique factual issues. *See Wheeler v. Equitable Life Assurance Soc'y of United States,* 211 Minn. 474, 1 N.W.2d 593, 597 (1942); *see also Benson v. Johnson,* 392 N.W.2d 890, 898 (Minn.App.1986) (where insured's no-fault policy contained arbitration provision, jury's resolution of reasonableness of insured's expenses would be accorded whatever weight arbitrators deemed justified). In this case, the scant factual record regarding the circumstances surrounding the parties' demands and refusals indicates the importance of arbitration.

Other jurisdictions have implicitly suggested the factual nature of what constitutes a reasonable physical examination. *See Allstate Ins. Co. v. Graham,* 541 So.2d 160, 162 (Fla.Dist.Ct.App.1989) (no evidence of insured's reasonable basis for refusing to attend independent medical examination); *Kay v. Aetna Casualty & Surety Co.,* 152 So.2d 198, 199 (Fla.Dist.Ct.App. 1963); *Falagian v. Leader Nat'l Ins. Co.,* 167 Ga.App. 800, 801, 307 S.E.2d 698, 700 (1983).

As the dissent indicates, our decision may yield divergent results. However, any divergence is driven by the case's unique facts. Such factual considerations, therefore, reside within the arbitrator's domain.

Moreover, Maryland Casualty will not be prejudiced by our disposition of this case. The No–Fault Act authorizes the Minnesota Supreme Court to establish rules for arbitration of all no-fault claims. Minn. Stat. § 65B.525 (1990). Rule 14 grants the arbitrator discovery powers and provides:

> The voluntary exchange of information is encouraged. Formal discovery of any kind beyond exchanging medical reports and other exhibits to be offered at the hearing is discouraged. However, upon application and good cause shown by any party, the arbitrator may permit any discovery allowable under the Minnesota Rules of Civil Procedure for the District Courts. Any medical examination deemed necessary by the respondent shall be completed within 90 days following commencement of the case unless extended by the arbitrator for good cause.

Minn.Stat.Ann. § 65B.525, Rules of Procedure for No–Fault Arbitration (West 1986). Maryland Casualty may simply seek an independent medical examination pursuant to Rule 14. The arbitrator may consider the parties' factual arguments and then order appropriate discovery.

We are convinced that an arbitrator's resolution of these factual issues is consistent with the primary goal of the No–Fault Act. *See* Minn.Stat. § 65B.42 (1990). The Act clearly seeks "to require medical examination and disclosure." Minn.Stat. § 65B.42, subd. 5. However, the Act also intends:

> To speed the administration of justice, to ease the burden of litigation on the courts of this state, and to create a system of small claims arbitration to decrease the expense of and to simplify litigation.

Minn.Stat. § 65B.42, subd. 4.

The approach advocated by Maryland Casualty and the dissent would needlessly duplicate and overburden the no-fault claim process. Factual disputes regarding the necessity for particular exams or conditions would first be argued before a district court. The parties would then proceed to arbitration before another factfinder.

Such a system would burden, rather than simplify, the resolution process.

The wisdom of leaving the resolution of these factual issues to an arbitrator is evident in this case. Harvey's examination was scheduled for September 1989. Nearly two years later, there has been no arbitration, the parties have incurred additional attorney fees, and significant judicial resources have been expended on a claim which was intended for binding arbitration. *See* Minn.Stat. § 65B.525 (1990).

### 2. *Breach of Contract*

Maryland Casualty argues that Harvey's failure to attend the independent medical examination precludes recovery of no-fault benefits after the date of the examination. Harvey argues that his failure to attend the examination does not automatically terminate benefits and is merely a factor which may be taken into account by the arbitrator. *See* Minn.Stat. § 65B.56, subd. 1. Alternatively, Harvey argues that Maryland Casualty's failure to pay basic economic loss benefits within 30 days after proof of loss precludes termination of benefits based upon Harvey's conduct.

■ We agree with Harvey. The No–Fault Act suggests an overriding legislative intent to compensate injured persons. *Iverson v. State Farm Mut. Auto Ins. Co.,* 295 N.W.2d 573, 575 (Minn.1980). *Iverson* invalidated State Farm's attempted exclusion which was not based on a specific provision of the No–Fault Act. *Id.* The Minnesota Supreme Court has followed *Iverson's* expansive recognition for basic economic benefit claims. *Petrich v. Hartford Fire Ins. Co.,* 427 N.W.2d 244, 246 (Minn. 1988); *see also Laffen v. Auto–Owners Ins. Co.,* 429 N.W.2d 264, 265–66 (Minn. App.1988), *pet. for rev. denied* (Minn. Nov. 16, 1988).

The No–Fault Act does not specifically allow an automobile insurer to terminate no-fault benefits for failure to attend a Minn.Stat. § 65B.56 medical examination. Rather, the state allows the arbitrator to consider an insured's noncooperation with reasonable medical examination requests.

Maryland Casualty's interpretation would nullify this part of the statute.

The statute rejects automatic termination of benefits for failure to attend an examination. The legislature could have simply provided for automatic termination of benefits for failure to attend the independent medical examination.

Additionally, Maryland Casualty's policy is subject to the statutory requirements of the Minnesota No–Fault Act. *See Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The No–Fault Act requires insurers to pay basic economic loss benefits within 30 days after receipt of reasonable proof of loss. Minn.Stat. § 65B.54, subd. 1 (1990). If Maryland Casualty breached the insurance contract by failing to pay medical expenses that came due, Maryland Casualty cannot raise Harvey's failure to attend the independent medical examination as a basis for terminating payment of benefits. *See M.T.S. Co. v. Taiga Corp.*, 365 N.W.2d 321, 327 (Minn.App.1985), *pet. for rev. denied* (Minn. June 14, 1985).

We conclude that whether Maryland Casualty breached the insurance contract by failing to pay Harvey's medical expenses within 30 days is a fact issue which could not be resolved by the trial court. If Maryland Casualty breached the contract, Harvey was under no obligation to continue to fulfill his duties under the contract.

### 3. *Attorney Fees*

On review, Harvey seeks attorney fees related to defending Maryland Casualty's declaratory judgment action. Harvey sought attorney fees from the trial court asserting that Maryland Casualty's declaratory judgment was frivolous. The trial court determined that Maryland Casualty raised unique issues in good faith and denied attorney fees.

■ Harvey failed to file a notice of review pursuant to Minn.R.Civ.App.P. 106. Harvey's failure to file a notice of review bars our consideration of this issue. *Northern State Bank of Thief River Falls*

*v. Efteland,* 409 N.W.2d 541, 544 (Minn. App.1987).

Affirmed.

EDWARD D. MULALLY, J., dissents and files opinion.

EDWARD D. MULALLY, Judge, dissenting.

I respectfully dissent.

The trial court erred in its determination that the dispute between the parties relative to conditions respondent seeks to impose before submitting to an independent medical examination was a fact issue for consideration and resolution by the arbitrator.

While it is true that under arbitration law generally arbitrators are the final judges of both law and fact, in the area of automobile reparation arbitration it is clear that arbitrators are limited to deciding issues of fact, leaving interpretations of law to the courts. *Johnson v. American Family Ins. Co.,* 426 N.W.2d 419 (Minn.1988). This policy seeks to assure a more consistent interpretation of the statutory provisions. Where arbitrators are called upon to construe Minn.Stat. § 65B.56, the number of differing interpretations relating to conditions that may be attached to the taking of an independent medical examination is limited only by the number of arbitrators concerned.

As argued by appellant, issues as to the requirement, scope and conditions of an independent medical examination permitted by the statute and the insurance contract, are not factual disputes; they are questions of law based on contract and statutory interpretation. To permit the arbitrator to construe the statute as it relates to the independent medical examination, or the effect of respondent's failure to appear and submit to the examination, would be contrary to the clear intent enunciated in *Johnson* that consistency mandates that the courts interpret the no-fault statutes. The problem here cannot be resolved, as the majority attempts to do, by designating as "factual issues" those that are clearly "legal issues."

The majority concludes that an independent medical examination's reasonableness presents "unique factual issues." The issues presented in this case are neither factual nor unique. They are legal issues that will arise in almost every personal injury action where an independent medical examination is sought by the party against whom a claim is made. From the standpoint of the claimants (and who can blame them), the right to have a third party present at every phase of every independent medical examination, tape recording the proceeding and looking over the doctor's shoulder, is a circumstance much to be desired. However, if such is to be an acceptable practice, let the court say so in order that uniformity can be achieved.

I would reverse and remand for consideration by the trial court.