Michelle NEAL, Appellant,

v.

STATE FARM INSURANCE
COMPANY, Respondent.

No. C4–93–647.

Court of Appeals of Minnesota.

Dec. 7, 1993.

Review Granted Feb. 1, 1994.

Mark E. Gilbert, Kalina Wills Woods Gisvold & Clark, Minneapolis, for appellant.

William M. Hart, Joseph W.E. Schmitt, Meagher & Geer, Minneapolis, Bradley T. Cosgriff, Labore & Giuliani, Ltd., Hopkins, for respondent.

Considered and decided by RANDALL, P.J., and CRIPPEN and THOREEN *, JJ.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## OPINION

RANDALL, Judge.

The trial court vacated an arbitration award that allowed appellant to recover further no-fault benefits after failing to attend an Independent Medical Examination (IME). The trial court concluded that appellant's unreasonable failure to attend an IME automatically allows the insurer to terminate payment of further no-fault benefits. We reverse.

## FACTS

In 1989, appellant was injured in a car accident. Because of those injuries, appellant incurred wage loss and medical expenses. Appellant was reimbursed by her no-fault insurer, respondent State Farm Insurance Company. Respondent scheduled an IME for appellant on November 2, 1990. Appellant failed to attend. Respondent suspended payment of further no-fault benefits.

Appellant filed a petition for mandatory arbitration in January of 1991. The arbitration hearing took place in June, and the arbitrator determined that appellant's failure to attend the IME did not warrant suspension of further benefits. The arbitrator ordered respondent to pay medical and wage loss benefits due appellant. The arbitrator stated:

> The claimant [appellant] presented the insurer with reasonable proof of the fact and the amount of the loss realized, which shifted the burden to the insurer to show why benefits were not owing. The insurer showed that the claimant had failed without explanation to attend a medical examination arranged by the insurer, but the insurer did not show that the claimant should be disqualified from receiving benefits, or should have to pay the cost of the medical exam, on account of that failure.
>
> There is no provision in the no-fault act providing that benefits otherwise owing can be withheld on account of the insured's failure to attend a medical examination, or

pointment pursuant to Minn. Const. art. VI, § 10.

that an insured who fails to attend a medical examination is responsible for the cost of the exam. Minn.Stat. § 65B.56, subd. 1, permits the insurer to include reasonable provisions in its insurance policy concerning physical examinations, but the underlying insurance policy in the present case was not in evidence, so the arbitrator has no way of knowing what reasonable provisions it may contain as to the consequences of the insured's failure to attend a medical examination arranged by the insurer.[1]

Respondent moved the trial court for vacation of the arbitration award, arguing (1) that the arbitrator exceeded the scope of its authority, and (2) that Minn.Stat. § 65B.525, subd. 1 (1990), which compels arbitration of claims under $5000,[2] is unconstitutional.

The trial court granted respondent's motion to vacate the arbitration award. The trial court concluded the arbitrator exceeded its authority to decide only factual issues, and further concluded that Minn.Stat. § 65B.56, subd. 1 "grants unequivocal authority" to respondent to require appellant to undergo an IME. The trial court specifically declined to rule on the issue of the constitutionality of Minn.Stat. § 65B.525, subd. 1.

Appellant challenged the order for vacation, appealing to this court. Based on the reasoning of *Maryland Cas. Co. v. Harvey*, 474 N.W.2d 189 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991), an opinion issued shortly after the first arbitration, this court remanded the case to the arbitrator for a finding on whether appellant's refusal to attend the IME was reasonable. *See Neal v. State Farm Ins. Co.*, No. C3–91–2515 (Minn. App. June 9, 1992) (order op.). This court did not address the issue of the constitutionality of section 65B.525. *See id.*

On remand, the arbitrator specifically found that appellant's failure to attend the IME was unreasonable. However, the arbitrator went on to note that its finding of unreasonableness did not change its award in favor of appellant. The arbitrator stated:

[E]ven a claimant's unreasonable refusal to attend a medical examination does not *ipso facto* under the statute permit the insurance company to refuse payment of benefits. Whether such unreasonable refusal would permit the insurance company to deny payment of benefits under the terms of its insurance policy is a different issue, but is an issue on which the insurer failed to introduce any evidence.

On motion by respondent, the trial court again vacated the arbitrator's award to the extent that it allowed appellant to recover no-fault benefits. The trial court concluded that an unreasonable failure to attend an IME authorizes an insurer to discontinue further benefits. The trial court declined to rule on the constitutionality of Minn.Stat. § 65B.525, subd. 1.

## ISSUES

1. Does Minn.Stat. § 65B.56, subd. 1 (1990) mandate automatic termination of no-fault benefits where an arbitrator has found that an insured's refusal to attend a scheduled Independent Medical Examination was unreasonable?

2. Is Minn.Stat. § 65B.525, subd. 1 (1990), which requires mandatory arbitration of no-fault claims under $5000, constitutional?

## ANALYSIS

### I.

*Unreasonable failure to attend an IME*

 To ensure consistent interpretation of the No–Fault Act, arbitrators presiding over no-fault arbitration decide only issues of fact. Interpretation of law is left to the courts. *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988). While an arbitrator's findings of fact are final, *id.* at 422, this court reviews questions of law de novo. *Castor v. City of Minne-*

---

1. State Farm did not submit the insurance policy into evidence at the arbitration. The policy was submitted to the trial court. However, the trial court's decision to vacate the arbitrator's award was not based on the terms of the policy.

2. Minn.Stat. § 65B.525, subd. 1 has been subsequently amended so as to compel arbitration of claims under $10,000. *See* 1991 Minn.Laws, Ch. 321, § 1.

*apolis,* 429 N.W.2d 244, 245 (Minn.1988). The trial court may vacate an arbitration award when the arbitrator has exceeded its powers by deciding a legal issue. *See* Minn. Stat. § 572.19, subd. 1(3) (1990); *Erickson v. Great Am. Ins. Co.,* 466 N.W.2d 430, 432 (Minn.App.1991). In this case, the burden rests with respondent to show the arbitrator exceeded its powers. *Hilltop Constr., Inc. v. Lou Park Apartments,* 324 N.W.2d 236, 239 (Minn.1982).

Minn.Stat. § 65B.56, subd. 1 provides that any person claiming benefits under a plan of reparation security must submit to an IME "as may reasonably be required" by the insurer. The statute provides that evidence of an insured's noncooperation in an IME "shall be admissible" in any suit or arbitration. Minn.Stat. § 65B.56, subd. 1.

In *Maryland Cas. Co. v. Harvey,* 474 N.W.2d 189 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991), the insured failed to attend a scheduled IME and the insurer subsequently terminated no-fault benefits. While arbitration was pending, the insurer brought a declaratory judgment to determine whether the insured's failure to attend an IME precluded payment of benefits. The trial court held that the reasonableness of the insured's refusal to attend the IME was a question of fact subject to arbitration. Thus, the trial court ordered arbitration. *Id.* at 191.

Affirming the trial court's order for arbitration, this court held that whether an insured reasonably refuses to attend an IME is a question of fact to be determined by the arbitrator. *Id.* at 192. Because the arbitrator in that case failed to make a factual finding on the reasonableness, the trial court appropriately ordered arbitration of the issue of reasonableness. In so concluding, this court noted that an insurer is not entitled to "an unconditional independent medical examination." *Id.* Rather, the court noted, the "statute imposes a standard of reasonableness on the entire scope of an independent medical examination." *Id.* The court also noted that the insurer in *Maryland Cas. Co.*

would not be prejudiced by requiring arbitration of the reasonableness of the failure to attend the IME because the insurer may simply seek an IME pursuant to the arbitration rules. Under arbitration rule 14, the arbitrator has discovery powers and the arbitrator must order a requested IME deemed necessary by the respondent. Minn.Stat. Ann. § 65B.525, Rules of Procedure for No–Fault Arbitration (West 1986).[3] Although it is not the basis of our decision, respondent did not seek an IME by this method. We do not address whether it would have been better practice for respondent to so proceed.

In *Maryland Cas. Co.,* after deciding that the question of the reasonableness of the failure to attend an IME is a question of fact for the arbitrator, the court went on to hold that an insured may not automatically terminate an insured's benefits for failure to attend an IME. *Id.* at 193–94. The court stated:

> [The insurer] argues that [the insured's] failure to attend the [IME] precludes recovery of no-fault benefits after the date of the examination. [The insured] argues that his failure to attend the examination does not automatically terminate benefits and is merely a factor which may be taken into account by the arbitrator.
>
> \* \* \* \* \* \*
>
> We agree with [the insured]. The No–Fault Act suggests an overriding legislative intent to compensate injured persons. \* \* \*
>
> \* \* \* \* \* \*

The No–Fault Act does not specifically allow an automobile insurer to terminate no-fault benefits for failure to attend a Minn.Stat. § 65B.56 medical examination. Rather, the statute allows the arbitrator to consider an insured's noncooperation with reasonable medical examination requests. [The insurer's] interpretation would nullify this part of the statute.

The statute rejects automatic termination of benefits for failure to attend an

---

**3.** Rule 14 is now rule 12. *See* Minn.Stat.Ann. § 65B.525, Rules for Procedure for No–Fault Arbitration (West Supp.1993).

examination. The legislature could have simply provided for automatic termination of benefits for failure to attend the independent medical examination.

*Id.* 474 N.W.2d at 193–94.[4]

■ Here, the arbitrator found appellant's failure to attend the IME was unreasonable. This determination of fact is not challenged on appeal. *Maryland Cas. Co.* states that an insurer is entitled to a reasonable IME. State Farm argues that *Maryland Cas. Co.* must be interpreted to mean that if an insured unreasonably fails to attend an IME, the insurer may automatically, as a matter of law, suspend benefits. We are not persuaded.

■ *Maryland Cas. Co.* simply points out that a finding of unreasonableness *might* have a legal consequence. The possibility of diminution or complete denial of benefits to the insured for noncooperation is implicit in the statute which states that evidence of noncooperation with an IME shall be admissible in suit or arbitration. *See* Minn.Stat. § 65B.56, subd. 1. The arbitrator here was free to consider the noncooperation and was free to let it affect appellant's rights. The arbitrator could have found the noncooperation was a reasonable basis to deny or diminish benefits. But *Maryland Cas. Co.* does not state that the arbitrator *had* to find that noncooperation means denial of benefits.

In vacating the arbitration award, the trial court relied on *Ortega v. Farmers Ins. Group,* 474 N.W.2d 7, 9 (Minn.App.1991). In *Ortega,* the insurer discontinued benefits when the insured failed to attend an IME. An arbitrator found in favor of the insurer and the trial court refused to vacate the arbitration award. On appeal, this court affirmed the trial court's refusal to vacate the arbitrator's award. The court noted that the statute specifically authorizes the arbitrator to consider the insured's failure to attend an

IME, and the insured failed to show the arbitrator exceeded his authority. *Id.* at 10.

The problem with the trial court's analysis here is its conclusion that "[i]mplicit in *Ortega* is that an unreasonable failure to attend an IME authorizes the insurer to discontinue further benefits." *Ortega* did not state that. *Ortega* merely repeated the intent of Minn. Stat. 65B.56, subd. 1 and *Maryland Cas. Co.*—that evidence of noncooperation is admissible. *Ortega* affirmed the arbitrator who found that on the facts of that case, the noncooperation justified termination of further benefits. But *Ortega* distinctly did not find that arbitrators automatically have to terminate benefits when they find noncooperation. Unfavorable evidence admitted against a claimant may cause the claimant to lose, and that loss might be affirmed on appeal. However, unfavorable evidence against a claimant does not necessarily mean that the claimant *must* lose. The entire record has to be looked at, not just a single piece of evidence which favors one side. *Ortega* merely held that the statute authorizes the arbitrator to consider the insured's failure to attend an IME. *See Ortega,* 474 N.W.2d at 10. Such consideration was given here.

There is no provision in the No–Fault Act automatically allowing an insurer to terminate no-fault benefits based on a claimant's failure to attend an IME. Here, the arbitrator explicitly considered the evidence of appellant's noncooperation with the IME. Nevertheless, the arbitrator determined the award in favor of appellant was justified.

*Maryland Cas. Co.* is instructive in its observation that the legislature could have provided for automatic termination of benefits for failure to attend an IME but did not do so. *Maryland Cas. Co.,* 474 N.W.2d at 194. Neither did the legislature provide for automatic termination for an unreasonable failure to attend an IME. The legislature

---

**4.** In *Maryland Cas. Co.* the court also held that if the insurer breached the contract first by failing to timely pay no-fault benefits that came due, the insurer cannot raise the insured's failure to attend an IME as a basis for terminating benefits because the insured was no longer obligated to continue to fulfill his duties under the contract.

The breach of contract issue was a fact issue left undecided in the case. *Maryland Cas. Co.,* 474 N.W.2d at 194. The same contract claims have been raised in this case. However, the issue of the alleged breach of contract by State Farm has not been by addressed by the arbitrator, the trial court or this court, and the issue is not before us.

only provided that it was admissible evidence.

Depending on the entire record, it would be permissible for an arbitrator to sustain a termination of benefits for noncooperation. Our holding is that mere noncooperation, without more, does not *mandate* automatic termination.

Appellant's attorney argued from a proper analogy. Counsel pointed out that the arbitrator's award of damages, regardless of the amount, only exposes the insurer to its policy limits. There could easily be a case where the damages were so severe, and the policy limit so modest, that an arbitrator could find, even though the claimant unreasonably failed to attend an IME, that the medical evidence in the record allowed for an award of at least the policy limits. Even where there is an IME and the results are unfavorable to a claimant, damages up to the policy limits can be legitimately awarded, depending on the other evidence. On the other hand, where the plaintiff's case is weak, an arbitrator might well use the unreasonable failure to attend an IME as part of the basis for awarding no damages or less damages than the claimant seeks.

It is clear that claimants who fail to cooperate with a properly scheduled IME must be prepared to accept negative consequences. But we find no law stating that noncooperation, without more, automatically zeros out all claimants in all cases.

## II.

*Constitutionality*

Article I, Section 4 of the Minnesota Constitution guarantees the right to a jury trial for "all cases at law without regard to the amount in controversy." Respondent argues that Minn.Stat. § 65B.525, subd. 1 (1990), which requires mandatory arbitration of no-fault claims under $5000, is an unconstitutional derogation of the right to a jury trial.

Minnesota law recognizes a presumption in favor of the constitutionality of a statute. *In re Estate of Turner*, 391 N.W.2d 767, 769 (Minn.1986). The party challenging the statute has the burden to prove beyond a reasonable doubt that the statute is unconstitutional. *Id.* Great caution must be exercised before declaring a statute unconstitutional. *State v. Hamm*, 423 N.W.2d 379, 380 (Minn.1988).

In 1930, the Minnesota Supreme Court considered a challenge on the same grounds of the constitutionality of the state statute requiring a mandatory arbitration clause in fire insurance policies. *Glidden Co. v. Retail Hardware Mut. Fire Ins. Co.*, 181 Minn. 518, 233 N.W. 310 (1930), *aff'd*, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931).[5] The Court held that because the *liability* of the insurer remained a question for the court and arbitration determined only the amount of the loss, the statute was constitutional. *Id.* 181 Minn. at 521–22, 233 N.W. at 312.

In *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 175 Minn. 73, 220 N.W. 425 (1928), the supreme court discussed the powers of arbitrators in fire insurance cases:

> The appraisers must determine many matters other than the mere value of specific property produced before them for examination and appraisal. They must determine the quantity of property covered by the policy and on hand at the time of the fire, the quantity destroyed, the quantity damaged, whether the damage resulted from causes covered by the policy or from other causes not covered thereby, and various other questions, both of law and fact, upon which the parties may differ.

*Id.* at 77–78, 220 N.W. at 427 (quoting *American Cent. Ins. Co. v. District Court*, 125 Minn. 374, 147 N.W. 242 (1914). The court went on to say that while it was the duty of the arbitrators to determine coverage as an incident to the determination of the amount of loss, their conclusions do not finally determine the insurer's liability on the contract. *Id.* 175 Minn. at 78, 220 N.W. at 427.

**5.** *Park Constr. Co. v. Independent Sch. Dist. No. 32*, 209 Minn. 182, 296 N.W. 475 (1941) overruled *Glidden*, but only to the extent that *Glidden* stands for the proposition that a general agreement to arbitrate all differences arising under a contract is contrary to public policy and therefore void.

*Glidden* is helpful. In no-fault arbitration, pure legal questions are determined by the court, not the arbitrator. *Johnson,* 426 N.W.2d at 421. Whether an insurer is liable on a contract for insurance is a legal question. *See Farkas v. Hartford Accident & Indem. Co.,* 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969). In section 65B.525 arbitration, the arbitrator is deciding the amount of loss, not the liability of the insurer on the contract.

The requirement of mandatory arbitration pursuant to Minn.Stat. § 65B.525, subd. 1 does not violate the Minnesota Constitution.

## DECISION

Minn.Stat. § 65B.56, subd. 1 (1990) contains no provision explicitly providing for automatic termination of benefits where a claimant unreasonably fails to attend an IME. The statute simply states that such noncooperation shall be admissible, and thus, by obvious implication, noncooperation may be used by an arbitrator to deny or diminish benefits. But noncooperation, by itself, does not mandate automatic denial.

Mandatory arbitration pursuant to Minn. Stat. § 65B.525, subd. 1 (1990) does not violate the Minnesota Constitution.

We reverse and order reinstatement of the arbitrator's award in favor of appellant.

**Reversed.**