Richard Alan **JOHNSON**, Appellant,

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Respondent.

No. C5-87-826.

Court of Appeals of Minnesota.

Oct. 6, 1987.

Review Granted Nov. 18, 1987.

John Kallestad, Willmar, for Richard Allen Johnson, appellant.

Joe E. Thompson, Willmar, for American Family Mut. Ins. Co., respondent.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Richard Johnson appeals a trial court order confirming an arbitration award denying him underinsured motorist insurance benefits. We affirm in part, reverse in part and remand.

## FACTS

On October 12, 1978, Richard Johnson, a minor, was injured in a school bus accident. The bus in which he was riding had been traveling on a two-lane road when, as it came over a hill, the driver encountered a car parked in its lane of travel. In order to avoid a collision, the bus driver swerved and crashed into a ditch.

Johnson suffered physical injuries and began to experience psychomotor (epileptic) seizures as a result of the accident. He sued the bus company and the owner of the parked car in August 1982. The bus company carried liability insurance up to $1,000,000; the car owner was insured for $100,000. Johnson settled the case in November 1983, receiving the liability limit of $100,000 from the car owner and $35,000 from the bus company.

At the time of the accident, Johnson was insured under a policy issued by American Family Mutual Insurance Company. The law in effect required American Family to offer underinsured motorist coverage. *See* Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980). Johnson's policy did not include underinsured coverage and Johnson alleged that American Family had failed to offer it.

Johnson brought this suit against American Family, claiming that he had been undercompensated for his injuries and requesting a declaratory judgment reforming his policy to include underinsured motorist coverage. Following a pretrial deposition, American Family admitted that it had failed to offer underinsured motorist coverage and consented to having the policy reformed to include the coverage. However, American Family argued that Johnson's failure to provide written notice prior to the settlement of his claims against the owner of the other vehicle and the bus company precluded him from receiving underinsured motorist benefits.

Johnson moved for judgment declaring that his failure to notify American Family of the settlement did not bar his claim for underinsured motorist benefits. The trial court declared that Johnson could pursue his claim for benefits, despite his failure to notify American Family of the settlement and despite the fact that the settlement had exhausted the policy limits of only one of the two third-party tortfeasors. The court also concluded that Johnson's claim for benefits was subject to the arbitration clause contained in the standard underinsured motorist provision.

The parties commenced arbitration, and the arbitrators found, with one dissent, that the bus driver had been negligent. All three arbitrators also concluded that because Johnson's total damages did not exceed the total policy limits of both tortfeasors, he could not recover underinsured motorist benefits. The trial court denied Johnson's motion to vacate the award, and this appeal followed.

## ISSUES

1. Did the trial court err in confirming the arbitration award?

2. Did the trial court err in reversing appellant's award of attorney's fees and awarding attorney's fees to respondent?

## ANALYSIS

### I

In denying Johnson's claim for benefits, the arbitrators relied on *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), for the proposition that he was prohibited from recovering damages unless his total damages exceeded the third-party tortfeasors' total available insurance coverage of $1,100,000. Johnson moved to vacate the award on the ground that the arbitrators had exceeded their authority in making that determination. Ordinarily, in the absence of fraud, bad faith, or any agreement limiting their authority, arbitrators are the final judges of both law and fact. *State by Sundquist v. Minnesota Teamsters Public and Law Enforcement Employees Union Local No. 320,* 316 N.W.2d 542, 544 (Minn.1982); *Eric A. Carlstrom Construction Co. v. Independent School District No. 77,* 256 N.W.2d 479, 483 (Minn. 1977).

However, if the issue of the scope of an arbitration agreement or the arbitrability of a particular question is raised in judicial proceedings to vacate an arbitration award, the trial court is not bound by the decision of the arbitrators, but must independently determine the question of scope by ascertaining the parties' intent from the language of their written agreement and such other admissible evidence as may be submitted to resolve the question. *U.S. Fidelity & Guaranty Co. v. Fruchtman,* 263 N.W.2d 66, 69 (Minn.1978).

The policy in this case carried two arbitration clauses, one of which generally provides:

> If any person making a claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator.

In addition, the endorsement providing uninsured and underinsured motorist coverages states:

> The company will pay [underinsurance benefits] provided that * * * for purposes of [underinsurance coverage] determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

As written, the policy calls for arbitration if the parties disagree on (1) whether the insured is legally entitled to recover damages from the insurer; or (2) what the amount of those damages will be. Thus, if the parties disagree on the merits of the insured's claim, in this case the comparative fault of the bus driver and the amount of Johnson's damages, then the matter can be resolved through arbitration. However, it is at least "reasonably debatable" whether the arbitration provisions require arbitration of questions on the terms or existence of the coverage. *Fruchtman,* 263 N.W.2d at 71 (interpreting substantially identical clauses). Because it is not clear from the wording of these arbitration clauses that coverage issues are to be resolved through arbitration, the arbitrators make only an initial determination of the dispute, subject to the right of judicial review. *Rosenberger v. American Family Mutual Insurance Co.,* 309 N.W.2d 305, 308 (Minn.1981).

Johnson maintains that the application of *Schmidt v. Clothier* to his claim involved an issue of coverage not subject to arbitration. Because he raised this issue in a pre-arbitration objection, he is not estopped by his argument on coverage before the arbitrators. *Rosenberger,* 309 N.W.2d at 308–09. If Johnson is correct, and the arbitrators' decision did involve a coverage dispute, their implied finding on arbitrability is reviewable de novo. *Id.*

It cannot be determined from the record precisely what issues were submitted to

the arbitrators; in its memorandum denying Johnson's motion to vacate, the trial court characterized them as factual issues involving the percentage of the bus driver's fault and the amount of Johnson's damages. Had the arbitrators decided those issues, their determination would not be subject to judicial review. However, the arbitrators found only that the bus driver had been negligent and that Johnson's damages did not exceed $1,100,000 and concluded that Johnson was not entitled to recover any damages. In that conclusion the arbitrators implicitly found that (1) underinsured motorist coverage was not afforded by the policy unless Johnson first exhausted total available insurance; and (2) the arbitration provisions of the policy empowered them to decide this coverage issue. The trial court's previous decision on another coverage issue—whether Johnson had any underinsured motorist coverage at all—does not make the arbitrators' decision any less a finding on the extent of that coverage.

Because it believed that the arbitrators had decided only factual issues, the trial court made no finding on whether the scope of the arbitration provisions included issues of coverage and confirmed the award as not exceeding the arbitrators' power. We think, to the contrary, that the arbitrators' conclusion implied a finding on the scope of the policy's underinsured motorist coverage and thus consider on review the arbitrability of the coverage issues.

In addition to the terms of the arbitration agreement, the nature of the coverage dispute must be considered in determining whether that dispute is arbitrable. For example, in *Woog v. Home Mutual Indemnity Co.*, 340 N.W.2d 863, 866 (Minn.1983), the court remanded the case to the trial court for specific findings on arbitrability because the record was so incomplete that it was "unclear what the dispute is about, much less if there is any merit to the dispute." *Id.*, 340 N.W.2d at 865. By contrast, in *Myers v. State Farm Mutual Automobile Insurance Co.*, 336 N.W.2d 288, 291 (Minn.1983), the court held that a coverage dispute involving the application of an unambiguous policy provision to

known facts was properly not submitted to arbitration. The rationale of that decision was that, under an arbitration provision substantially identical to those in this case, it was not even "reasonably debatable" that the parties intended to require arbitration of a coverage dispute of that nature. *Id.*

Like the dispute in *Myers*, the coverage dispute in this case involves the straightforward application of legal precedent to the facts of Johnson's case, and the trial court erred in declining to review the arbitrators' finding. Moreover, insofar as the trial court did review and approve the arbitrators' determination that *Schmidt v. Clothier* precluded coverage of Johnson's claim, the trial court's conclusion, involving as it does an issue of law, is properly subject to appellate review. *Myers*, 336 N.W.2d at 291.

**II**

 *Schmidt v. Clothier*, upon which the arbitrators relied in denying Johnson's claim, involved two consolidated cases brought against the same insurance company for underinsured motorist benefits. One of the claims, Paskoff's, arose out of an accident involving two insured tortfeasors. Both offered to settle, one for $22,000 on a $25,000 liability policy and the other for $4,000 on a $300,000 policy. The insurer refused to consent to the settlement offers and contended that Paskoff was not entitled to underinsured motorist benefits until he had exhausted the limits of both tortfeasors' liability insurance.

The court held that the settlement of a claim below the tortfeasor's policy limits did not bar an insured from recovering underinsured motorist benefits, but restricted the amount of benefits to the amount by which the insured's damages exceeded the tortfeasor's policy limits. *Id.*, 338 N.W.2d at 261. Although the court's reasoning and holding are phrased in terms of a single tortfeasor, they necessarily applied to Paskoff's case, as the other claimant, Schmidt, appears to have received a settlement offer which equalled the liability

limits on available insurance. *Id.,* 338 N.W.2d at 259. The court, however, did not specifically explain its conclusion that Paskoff's insurer was liable to pay the amount by which Paskoff's damages exceeded the liability limits of only one of the two insured tortfeasors, without regard to the liability limits of the other. *Id.,* 338 N.W.2d at 263–64.[1]

We cannot agree with American Family's assertion that this specific conclusion resulted from the court's mistaken assumption that there was only one tortfeasor in the Paskoff case. The facts set forth in the opinion clearly demonstrate the court's awareness that two tortfeasors existed, one of whom had liability limits nearly $300,000 greater than the nominal amount offered in settlement.

The court's conclusion as to Paskoff is consistent with the policy concerns expressed in the remainder of the opinion, particularly the insured's right to obtain the best possible recovery while avoiding the expense and delay of litigation. *Id.,* 338 N.W.2d at 260–61. The insured's right to prompt payment takes precedence over the insurer's right to object to the terms of a proposed settlement to protect its subrogation interest; if the insurer objects, it must pay the amount of the proposed settlement to the insured within 30 days after notice of the settlement. Such payment to the insured preserves the insurer's subrogation rights, and the insurer can thereafter attempt to negotiate a better settlement or proceed to trial in the insured's name.

While this procedure is less straightforward if a claim involves more than one tortfeasor, the essential rationale of encouraging settlement and prompt payment of claims still applies. Settlement problems arise when, as here, the tortfeasor who was primarily responsible for the injuries does not carry sufficient insurance, while another, less culpable tortfeasor does. In these circumstances, if the plaintiff were to proceed to trial without settling claims against any defendants, any defendant found negligent or otherwise culpable would be liable for the entire amount of the plaintiff's damages. Minn. Stat. § 604.02, subd. 1 (1978); *Maday v. Yellow Taxi Co. of Minneapolis,* 311 N.W.2d 849, 850 (Minn.1981). However, if one defendant is not able to pay its "equitable share" of the judgment, reallocation of that share among remaining defendants requires a judicial determination of uncollectibility. Minn.Stat. § 604.02, subd. 2 (1978). Although such a determination is to be made not more than one year after judgment is entered, in some circumstances a determination of uncollectibility may be stayed indefinitely. *See Hosley v. Pittsburgh Corning Corporation,* 401 N.W.2d 136 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 23, 1987).

The existence of multiple tortfeasors thus vastly complicates settlement prospects, particularly because *Pierringer* releases have the effect of destroying joint liability. As Justice Simonett has noted,

[i]f the plaintiff misjudges the situation and releases a defendant, who, it turns out, is liable for a substantial portion of the judgment, that share of recovery is lost to the plaintiff because a non-settling defendant is responsible only for his own share of fault. Where it appears comparative fault among the parties is highest with the defendant who can least pay and the lowest with the defendant who can best pay, plaintiff's counsel, keeping in mind that a *Pierringer* destroys joint liability and preserves only the several liability of the non-settlors, may well be disinclined to use the release.

---

1. We note that the statute imposing the requirement to offer underinsured coverage, Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980), appears to define underinsured by reference only to the *other* vehicle:

 Underinsured motorist coverage offered in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select, whereby the reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages *exceed the residual bodily injury liability limit of the owner of the other vehicle.* * * *
 (Emphasis added).

Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota,* 3 Wm. Mitchell L.Rev. 1, 34 (1977). On the other hand, if the culpability of the sufficiently insured tortfeasor is doubtful, an injured person might prefer to take an immediate settlement rather than go through a lengthy trial only to have the jury conclude that the "deep pocket" was not negligent at all.

While settlement decisions are thus more complex when more than one potentially liable tortfeasor is involved, under *Schmidt v. Clothier* these decisions are nonetheless to be made, in the first instance, by the insured. If the insurer disagrees with the insured's assessment of the probability of a finding of negligence against the less patently culpable tortfeasor, then the insurer retains the option of paying the settlement amount and underinsurance benefits to the insured and then proceeding against both tortfeasors in the insured's name. Should the insurer fail to do so, its liability under *Schmidt v. Clothier* for underinsurance benefits is measured by the amount by which plaintiff's damages exceed the liability insurance limits of the underinsured but primarily culpable defendant.

Not only does this result encourage settlement and afford the insured initial control and prompt payment of his claim, but a contrary result would effectively nullify underinsurance coverage in accidents involving two or more drivers, one of whom is more at fault in causing the injuries. *See Franke v. Allstate Insurance Co.,* Henn.Cty.Dist.Ct. No. 756530, June 23, 1980, *cited in Schmidt v. Clothier,* 338 N.W.2d at 261 n. 2.

In this case the insurer was not given the opportunity to substitute its payment for that of the settlors and thus preserve its subrogation rights. However, we agree with the trial court that American Family cannot now benefit from its failure to make the required offer of underinsurance by asserting lack of notice as a defense. *See Siebels v. American Family Mutual Insurance Co.,* 374 N.W.2d 220, 222 (Minn.Ct. App.1985).

## III

When it initially determined that American Family's failure to offer insurance coverage entitled Johnson to reformation of the policy to include such coverage, the trial court awarded Johnson his attorney's fees. In its order confirming the arbitration award, the trial court reversed its award of fees to Johnson and instead awarded American Family its costs and disbursements incurred in defending Johnson's claim.

In making its initial award of attorney's fees to Johnson, the trial court relied on *Kline v. Hanover Insurance Co.,* 368 N.W.2d 381 (Minn.Ct.App.1985), in which this court stated:

> Attorneys' fees are properly allowed in declaratory judgments determining insurance coverage because "an insurance contract is intended to relieve the insured of the financial burden of litigation" and because the declaratory judgment costs are considered "consequential damages."

*Id.,* 368 N.W.2d at 383 (citations omitted). However, that rationale applies to actions determining whether a particular incident is covered under the insurance contract and is not equally applicable to declaratory judgment actions in which a plaintiff seeks to have coverage "read into" the contract. In the former instance, the insurer has breached the contract of insurance by failing to provide coverage in accordance with the terms of the contract, and attorney's fees are properly viewed as damages resulting from that breach. In this case, by contrast, the declaratory judgment action sought to reform the terms of the contract, and until that reformation was made, there can have been no breach.

This case does not fit that exception to the general rule that attorney's fees are not awardable in the absence of statutory authority. *Abbey v. Farmers Insurance Exchange,* 281 Minn. 113, 119, 160 N.W.2d 709, 712 (1968). The trial court correctly reversed its initial award of attorney's fees to Johnson.

## DECISION

The trial court erred in confirming the arbitration award, but correctly ruled that

appellant was not entitled to attorney's fees incurred in the declaratory judgment action.

Affirmed in part, reversed in part, and remanded for arbitration to determine the amount by which appellant's damages exceed $135,000.