Richard Alan JOHNSON, Respondent,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellant.

No. C5–87–826.

Supreme Court of Minnesota.

July 1, 1988.

Joe E. Thompson, Willmar, for appellant.

John Kallestad, Willmar, for respondent.

## OPINION

AMDAHL, Chief Justice.

Appellant, American Family Mutual Insurance Company, appeals from a court of appeals decision which reversed an arbitration award. The court of appeals reviewed the arbitrators' determination *de novo* and concluded that the measure of an insurer's liability for underinsured motorist benefits is the amount by which an injured insured's damages exceed the liability limits of the primarily culpable tortfeasor. We agree that *de novo* review was appropriate, but we reverse on the issue of the measure of an underinsurer's liability.

Respondent, Richard Alan Johnson, a minor, was severely and permanently injured on October 12, 1978 when the school bus in which he was riding swerved into a ditch to avoid a collision with a car parked on the wrong side of the road. In the accident, Johnson fractured his left leg and sustained a brain injury which causes him to

experience episodes of psycho-motor seizures. Despite medication, occasional seizures continue to recur.

The car was insured for liability limits of $100,000. The bus was insured for liability limits of $1,000,000.

Johnson commenced suit against both drivers in August 1982. Eventually, the parties reached a settlement in which Johnson received the policy limits of $100,000 from the driver of the car. The bus company's insurer contributed an additional $35,-000, but the $135,000 did not fully compensate Johnson for his injuries.

Johnson then commenced suit against his own insurance carrier, American Family Mutual Insurance Company (American Family), to recover underinsured motorist benefits. Although the policy, as written, did not include underinsured motorist coverage, the trial court incorporated these benefits by judicial order because American Family had failed to make the mandatory offer of this coverage under Minnesota Statutes Section 65B.49, subdivision 6(e) (1978) (repealed 1980). The court also ordered arbitration.

The parties indicated some confusion over exactly what issues were to be arbitrated. Each wrote to the trial judge asking for clarification. Prior to arbitration, the trial court indicated that the arbitrators were to decide whether American Family was entitled to an off-set equalling $1,100,-000, the total liability limits of both settling tortfeasors. Yet in a later memorandum, the trial court stated that only two factual issues had been submitted to the panel for resolution: (1) The percentage, if any, of the bus driver's fault; and (2) the amount of Johnson's damages.

The arbitration panel determined that the bus driver was negligent, that Johnson's damages did not exceed $1,100,000 (the combined liability limits of both drivers' insurance policies) and that Johnson was therefore precluded from recovering underinsured motorist benefits under *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983).

Johnson moved to vacate the award on the basis that the arbitrators had exceeded the scope of their authority in applying the rule in *Schmidt*. The trial court, however, upheld the decision.

On Johnson's appeal, the court of appeals, having first determined that the panel had arguably exceeded the scope of its authority, examined the decision *de novo*. The court then concluded that an insurer's liability for underinsured motorist benefits is measured by the amount by which the injured party's damages exceed the liability insurance limits of only the "primarily culpable defendant." *Johnson v. American Family Mutual Insurance Co.*, 413 N.W. 2d 172, 177 (Minn.App.1987). We accepted American Family's petition for further review.

1. As a threshold issue, we must determine whether the arbitration panel exceeded the scope of its power by deciding an issue of coverage not properly subject to arbitration.

Minnesota law provides that, upon application of a party, a trial court shall vacate an award when the arbitrators exceed their powers. Minn.Stat. § 572.19, subd. 1(3). (1986) The scope of the arbitrators' powers is determined by the intent of the parties: "What is arbitrable depends on what the parties intended to arbitrate." *Woog v. Home Mutual Indemnity Co.*, 340 N.W.2d 863, 865 (Minn.1983). The trial court must independently ascertain that intent "from the language of their written agreement and such other admissible evidence as may be submitted to resolve the questions of law or fact." *United States Fidelity & Guaranty Co. v. Fruchtman*, 263 N.W.2d 66, 69 (Minn.1978).

The insurance contract between American Family and Johnson provided for arbitration of disputed claims. In addition to a general arbitration provision, the endorsement providing uninsured and underinsured benefits stated:

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an underinsured automobile, * * * provided that, * * * for purposes of this [underinsurance] coverage, determination as to

whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

Relying on the interpretation of a "substantially identical" clause in an insurance contract in *Fruchtman*, the court of appeals determined that it was at least "reasonably debatable" that these arbitrators had decided an issue of coverage not properly subject to arbitration and proceeded to review the decision *de novo. Johnson*, 413 N.W.2d at 174.

It is not clear from the record what issues were actually submitted to the arbitration panel. Certainly, the arbitrators in this case were to decide if the bus driver was at fault and the amount of Johnson's damages. Prior to arbitration, Johnson's attorney wrote to the trial court requesting clarification of the order to arbitrate. In that letter, he questioned American Family's position that the arbitrators should address a third issue: whether the damages awarded were to be offset by the liability limits of all settling tortfeasors (i.e. by $1,100,000) or by the settlement amount of $135,000.

The trial judge responded that the order was self-explanatory and that the third issue was to be submitted to the arbitration panel. However, it is not evident from the policy language that the limits of underinsured motorist coverage available was an arbitrable issue.

The arbitrators found that the bus driver was negligent to some unspecified degree and that Johnson's damages did not exceed the total available liability insurance of the two vehicles. And then they applied the law. They concluded that Johnson's claim was barred by the rule in *Schmidt* because his damages did not exceed $1,100,000, the combined liability limits of the tortfeasors.

█ Generally, arbitration law states that arbitrators are the final judges of both law and fact. *State, by Sundquist v. Minnesota Teamsters Public and Law Enforcement Employees Union Local No.*

*320*, 316 N.W.2d 542, 544 (Minn.1982). Courts assume that arbitrators are faithful to their obligations, absent a clear showing that their authority has been exceeded. *Hilltop Construction, Inc. v. Lou Park Apartments*, 324 N.W.2d 236 (Minn.1982). Indeed, a court will not even set aside an arbitration award because it thinks the arbitrators erred as to the law or facts, as long as the reasoning and judgment are consistent. *Cournoyer v. American Television and Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411–12 (1957).

This doctrine works well in labor arbitration where contracts are often ambiguous and the parties have a history of dealing. *See State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977). However, we noted in *Myers v. State Farm Mutual Auto Insurance Co.*, 336 N.W.2d 288, 290–91 (Minn.1983), that coverage issues under an insurance policy are not the same as coverage issues under a labor collective bargaining agreement. We implied in *Myers* that the coverage issue in this appeal is not arbitrable.

█ We think that consistency mandates that the courts interpret the no-fault statutes, not various panels of arbitrators. Therefore, we hold that in the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts. In this case, the measure of the gap between Johnson's damages and the available liability insurance is an issue of law which must be determined by the court, not by the arbitration panel.

2. In denying Johnson's claim, the arbitrators relied on *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). *Schmidt* involved the consolidation of two claims brought against the same insurance company for underinsured motorist benefits. The claim of Edward Paskoff resembles that of Richard Johnson.

Paskoff was injured while a passenger in a car driven by Linda Epperly and owned by Minneapolis Special School District No. 1. The Epperly car collided with a car driven and owned by defendant, Gerald Hoag. Paskoff sued both tortfeasors. Ep-

perly offered to settle for $4,000 of the district's $300,000 liability policy; Hoag offered to settle for $22,000 out of his $25,000 liability policy. Paskoff notified his own insurer that he intended to accept the settlement and then made a claim for underinsured motorist benefits. *Schmidt,* 338 N.W.2d at 259.

The insurance company refused to pay, declaring that Paskoff must first exhaust "the limits of the defendants' liability policies." *Id.*

The *Schmidt* court declined to enforce the exhaustion requirement of Paskoff's insurer. *Id.* at 260. However, the court concluded:

> [T]he insured cannot obtain a below-limit settlement from the tortfeasor and then recoup the "gap" from the underinsurance carrier. * * * We hold that the underinsurer is liable only for the amount of damages suffered by the insured in excess of the liability limits of the defendant. * * * [T]he underinsurer's liability depends not on the settlement but rather on the readily ascertainable liability limit of the defendant.

*Id.* at 261.

The language of the *Schmidt* rule is cast in the singular, notwithstanding the position of the underinsurer that Paskoff was required to exhaust the liability limits of *both* defendants prior to receiving underinsured motorist benefits. *Id.* at 259.

The scenario becomes more complex when more than one tortfeasor is involved. When the *Schmidt* court applied its rule to the Paskoff facts, it stated that the insurer was "liable to pay the amount, if any, by which Paskoff's total damages exceed the liability limits of the underinsured defendant Hoag." *Id.* at 263–64.

The court of appeals interpreted *Schmidt* to mean that an insurer's liability "for underinsurance benefits is measured by the amount by which plaintiff's damages exceed the liability insurance limits of the underinsured but primarily culpable de-

fendant." *Johnson,* 413 N.W.2d at 177. Hoag was the primarily culpable defendant in Paskoff's accident. The driver of the car was the primarily culpable defendant in Johnson's accident. Thus, the court of appeals concluded that American Family was not entitled to a set-off for the gap between the $1,000,000 liability limits of the bus company and the $35,000 settlement; further, no set-off was necessary between the liability insurance maximum of the driver of the car and the settlement amount because Johnson had settled for the full amount of the primarily culpable defendant's insurance coverage. *Id.* at 178. We disagree.

Under the statutory definition in effect at the time of this accident underinsured motorist benefits are to compensate injured persons for damages in excess of a tortfeasor's liability limits. Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980).[1] We think that the approach embraced by the court of appeals undermines the very nature of the coverage.

Underinsured motorist coverage is not an alternative to liability coverage. This is not some optional protection which an injured party can choose in lieu of asserting a claim against an insured tortfeasor. It is merely "excess coverage over the liability limit that would be available when damages were uncompensated merely because the tortfeasor carried inadequate liability insurance." *Schmidt,* 338 N.W.2d at 261.

The arbitrators found the bus driver negligent, and we must accept this finding, for it is clearly within the scope of their fact-finding powers. Thus, the entire liability insurance coverage of the bus company became available to Johnson. Because Johnson's injuries did not exceed the combined liability limits of all tortfeasors, the vehicles are not really underinsured.

Of course, Johnson settled with both drivers. However, we note that even if the bus driver were but slightly negligent, the bus company could be responsible for the

---

1. It should be noted that under the current statute, an insurer must receive credit against the limits of underinsured motorist coverage for any amount previously paid to the injured par-

ty. Minn.Stat. § 65B.49, subd. 4a (1986). Therefore, amounts received from a prior settlement must be deducted from the amount of underinsured motorist insurance available.

entire award, had Johnson proceeded to trial. Minnesota law has retained the concept of joint and several liability, even while embracing a comparative negligence or comparative fault doctrine. *See Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289 (Minn.1986).

The statute in effect at the time of the accident provided: "When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award." Minn.Stat. § 604.02, subd. 1 (1978).[2]

We think that the only way for the underinsurance concept to have consistency is to consider the liability limits of all tortfeasors in determining the amount recoverable by an injured insured. Since each could be liable for the entire amount, the liability insurance limits of each must be considered in any set-off allowed the underinsurance carrier.

 We hold that underinsured motorist benefits cover only those damages in excess of the combined liability insurance limits of all tortfeasors. This, we believe, will make underinsurance available for exactly the purpose for which it was intended.

Affirmed in part and reversed in part.

2. At the time of this accident, the bus company could have been responsible for the entire award, had the bus driver been only one percent negligent. However, under the current statute governing joint and several liability, a tortfeasor must be at least 15% negligent before he can be held liable for the entire award. 1988 Minn. Laws ch. 503, § 3, subd. 1.