**FARMLAND INSURANCE COMPANIES OF DES MOINES, IOWA, Plaintiff and Appellee,**

v.

**Nicholas HEITMANN, Defendant and Appellant,**

and

**Laura Heitmann, Deceased; Horace Mann Insurance Co.; and Viking Insurance Co., Defendants.**

No. 17854.

Supreme Court of South Dakota.

Argued Oct. 5, 1992.

Decided April 7, 1993.

Lon Kouri of May, Johnson, Doyle & Becker, Sioux Falls, for plaintiff and appellee.

J. Michael Dady and Ann K. Grossman of Lindquist & Vennum, Minneapolis, MN, for defendant and appellant.

WUEST, Justice.

This is an appeal from summary judgment granted to Farmland Insurance Co. concerning its obligation to pay underinsured motorist benefits for the death of Laura Heitmann. We affirm.

## FACTS

The facts in this case are not in dispute. On August 24, 1990, decedent Laura Heitmann was riding her bicycle when she was struck and killed by a pick-up truck driven by Terrance Hornseth (Hornseth) and owned by Gary Greseth (Greseth). Horn-

seth was drunk at the time; he later pled guilty to vehicular homicide in the accident.

At the time of the accident, Hornseth carried liability insurance with a per person limit of $25,000 with Viking Insurance Company and Greseth carried liability insurance with a per person limit of $100,000 with Horace Mann Insurance Company. Laura Heitmann and her husband, Nicholas, carried automobile liability insurance which included a $100,000 per person limit of underinsured motorist coverage (UIM), with Farmland Insurance Companies of Des Moines, Iowa (Farmland). Nicholas Heitmann (Heitmann) has neither demanded nor received payment under the liability policies of Hornseth or Greseth.[1]

Farmland failed to issue its standard UIM limiting endorsement with the Heitmann's policy. The missing endorsement would have limited the available UIM coverage to the difference between the UIM policy limits and all other applicable insurance. Claiming damages sustained as a result of Laura's death exceeded the amounts available under the applicable liability policies, Heitmann demanded payment of the $100,000 UIM from Farmland.

Farmland denied payment and brought a declaratory judgment action to determine its obligations to its insured. The trial court determined the terms of the insurance policy issued to the Heitmanns provided UIM coverage for uncompensated damages up to the $100,000 limit. The court then found SDCL 58–11–9.5 (1990) limited Heitmann's recovery to the difference between the policy limits and the amount recovered from any tort-feasors and it granted summary judgment to Farmland.

Heitmann appeals; we address the following issue:

> WHETHER SDCL 58–11–9.5 OPERATES TO LIMIT UNDERINSURED MOTORIST COVERAGE TO THE DIFFERENCE BETWEEN THE POLICY LIMITS AND THE AMOUNT RECOVERED FROM THE TORT–FEASOR.

Summary judgment will be affirmed only if there are no genuine issues of material fact and the trial court has correctly decided the legal issues before it. *Stroh v. Town of Java,* 463 N.W.2d 923 (S.D.1990); *Bego v. Gordon,* 407 N.W.2d 801 (S.D.1987); *Trapp v. Madera Pacific, Inc.,* 390 N.W.2d 558 (S.D.1986). There is no dispute as to the facts in this case. Consequently, we review to determine the correctness of the trial court's application of the law. Construction of a statute is a question of law. *Vellinga v. Vellinga,* 442 N.W.2d 472 (S.D.1989); *Nash Finch Co. v. South Dakota Dep't of Revenue,* 312 N.W.2d 470 (S.D.1981). Review of the trial court's order granting summary judgment will be affirmed if any basis exists which supports the ruling. *Trapp,* 390 N.W.2d at 562; *Uken v. Sloat,* 296 N.W.2d 540 (S.D. 1980).

I.

Farmland argues the missing endorsement imposed the obligation to pay UIM benefits and, without the endorsement, the duty to pay benefits must be imposed by statute. Heitmann argues the terms of the policy issued impose an obligation to pay UIM benefits without the endorsement so there is no need to impose a duty to pay through use of the statute.

The trial court was correct in finding the policy issued by Farmland provided coverage up to "the full amount the insured is legally entitled to recover as damages," capped only by the $100,000 policy limit. The policy issued to the Heitmanns states on the cover page "[t]hese policy provisions with the declarations page and endorsements, *if any,* issued to form a part thereof, *complete* this policy." (Emphasis added.) Part B of the declarations page states clearly "insurance is provided where a premium is shown for the coverage." Directly underneath is printed a charge for underinsured coverage of $100,000 per person, $300,000 per accident. Another provision

---

**1.** We note an auto claim data sheet of Horace Mann Insurance alleges the Montana licensed vehicle was stored in South Dakota, was taken by a relative of Greseth's and was being driven without permission by a friend of the relative when Laura Heitmann was killed.

in the contract defines an "underinsured motor vehicle."

"Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the insured is legally entitled to recover as damages.

This completes the policy's reference to underinsured coverage. The trial court correctly refused to consider the missing endorsement as part of the policy. The policy as issued provided $100,000 UIM without any limitations.

Farmland next claims since South Dakota statutes are automatically incorporated into insurance contracts, SDCL 58–11–9.5 operates to limit UIM to the difference between the UIM policy limits less the amount available from the tort-feasors. Heitmann argues if the statute applies, the first sentence of the statute allows the terms of the insurance contract to extend broader coverage than required by law. Thus, Heitmann's UIM coverage would be subject to the terms of the insurance policy, not the lesser coverage imposed by statute.

SDCL 58–11–9.5 provides:

Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

### A.

First, we decide whether the statute is applicable to this policy. Farmland relies on the "general rule" that statutes in effect at the issuance of the policy become part of the policy itself. Farmland, citing *Alexander* and *Epiphany*, asserts South Dakota law follows the "general rule" and requires existing statutes to be read into an insurance policy as if they were express provisions. *Alexander v. Home Ins. Co.*, 53 S.D. 305, 308, 220 N.W. 525, 526 (1928); *Epiphany Roman Catholic Church v. German Ins. Co.*, 16 S.D. 17, 20, 91 N.W. 332, 333 (1902).

Heitmann asserts there is an exception to this general rule when the policy is more favorable to the insured. "An exception is made to the rule that the statute prevails over the terms of the contract where the provision of the policy which conflicts with the statute is more favorable to the insured. In such case the policy provision prevails and is enforced." Couch on Insurance 2d (Rev. ed.) § 13:8. Further, Heitmann distinguishes the South Dakota cases of *Alexander* and *Epiphany* as both cases enlarged, not reduced, the scope of protection for the insured. *Alexander*, 53 S.D. at 310, 220 N.W. at 526; *Epiphany*, 16 S.D. at 23, 91 N.W. at 332.

The trial court determined "contracts cannot change statutory law" and found the weight of authority followed the "general rule." Couch on Insurance 2d (Rev. ed.) § 13:7; 43 Am.Jur.2d, *Insurance*, § 256. The trial court, citing *Alexander* and *Epiphany*, held, "[i]n South Dakota insurance statutes in force at the time an insurance contract is entered into become a part of the contract as if the statute had been incorporated into the policy itself."

■ We agree with the trial court and the greater weight of authority. "As a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." Couch on Insurance 2d (Rev ed) § 13:7. "Where such statutes exist, their provisions become mandatory unless expressly rejected as provided by law.... One must consider the legislative intent and statutory purpose, and its definitions will prevail over those of a policy."

8C Appleman, Insurance Law and Practice § 5067.35 (1981).

The determinative factor in South Dakota is the apparent intent of our state legislature. *Union Ins. Co. v. Stanage,* 454 N.W.2d 736, 739 (S.D.1990). By passing SDCL 58–11–9, which requires UIM insurance, the legislature clearly sought to protect insured motorists from underinsured motorists. *Id.* However, modifications of this statute show a legislative determination that UIM coverage may be limited. *See* SDCL §§ 58–11–9.6 thru 58–11–9.9. Only policy provisions not inconsistent with chapter 58 may be included in insurance policies.[2] Chapter 58 governs policies omitting required conditions or containing provisions inconsistent with the chapter.[3] Further, where the legislature intended to allow contractual deviations from chapter 58, it has used discretionary language or expressly stated exceptions.[4] We hold SDCL 58–11–9.5 applies to UIM policies sold in South Dakota.

### B.

We now address Heitmann's contention that if SDCL 58–11–9.5 applies, the first sentence allows parties to contract for broader coverage than the statute requires. In reviewing statutes, this court will construe them according to their plain and ordinary meaning. *Cimarron Ins. Co. v. Croyle,* 479 N.W.2d 881, 886 (S.D.1992); *Appeal of AT & T Information Systems,* 405 N.W.2d 24, 27 (S.D.1987); *Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559, 561 (S.D.1981). It is a fundamental rule of statutory construction that a

statute must be read as a whole and effect given to all its provisions. *Beitelspacher v. Winther,* 447 N.W.2d 347, 351 (S.D. 1989); *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 295 (S.D.1982); *State v. Heisinger,* 252 N.W.2d 899, 903 (S.D.1977).

The question in construing SDCL 58–11–9.5 is whether the modifying clause "[s]ubject to the terms and conditions of such underinsured motorist coverage" applies only to the sentence in which it appears or to the entire statute. "It is a general rule of statutory construction that modifying phrases or clauses should be referred to the word, phrase, or clause with which they are grammatically connected." *EEOC v. Brotherhood of Painters,* 384 F.Supp. 1264, 1266 (D.S.D.1974) (citing *M'Clurg v. Kingsland,* 42 U.S. (1 How.) 202, 11 L.Ed. 102 (1843)); *Cf. Kaberna v. School Bd. of Lead–Deadwood,* 438 N.W.2d 542, 543 (S.D.1989). Here, the phrase allowing contractual modification appears only in the first sentence of the statute. To accept Heitmann's argument, apply the modification language to the entire statute, and allow contractual modification would make the coverage limits imposed by the statute meaningless and render the second sentence surplusage.

Further, the word "shall" in the second sentence is mandatory, not discretionary, language. *Helmbolt v. LeMars Mut. Ins. Co., Inc.,* 404 N.W.2d 55, 59 (S.D.1987); *Cf. State v. Bunnell,* 324 N.W.2d 418, 420 (S.D.1982); *Stephens v. Jones,* 24 S.D. 97, 100–01, 123 N.W. 705, 707 (1909). This court assumes "statutes mean what they

---

**2.** SDCL 58–11–10 provides:

A policy may contain additional lawful provisions not inconsistent with this title, subject to the director's approval.

**3.** SDCL 58–11–38 provides:

Any insurance policy, rider, or endorsement issued after June 30, 1966 and otherwise valid which contains any condition, omission or provision not in compliance with the requirements of this title, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been *in full compliance with this* title.

**4.** SDCL 58–11–9.3 provides:

An insurance policy *covering a private passenger automobile or other motor vehicle registered or principally garaged in this state may by written agreement with the named insured exclude a named individual from coverage or contain a restrictive endorsement reducing the limits of liability or collision coverage when the vehicle is operated by a named person or class of persons, provided, however, that the liability coverage may not be less than the minimum prescribed by chapter 32–35 as amended.*

say and that legislators have said what they meant." *In re Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984) (citing *Crescent Electric Supply Co. v. Nerison,* 89 S.D. 203, 210, 232 N.W.2d 76, 80 (1975)). If the legislature had intended UIM coverage limits to be subject to contractual terms, it could have used the discretionary "may" instead of the mandatory "shall."

▪ The clear intent of the legislature was to limit the amount recovered under UIM without any exceptions by contract. This court must construe the law as it finds it, whatever its opinion as to the wisdom of the legislation. *Famous Brands,* 347 N.W.2d at 884. We hold that coverage is limited to the difference between the underinsured motorist coverage limits on the vehicle of the insured less the amount paid by the liability insurer of the underinsured motorist.

### C.

Heitmann argues that even if SDCL 58–11–9.5 applies, Farmland cannot apply any offset until damages are actually paid by the tort-feasor or his liability insurance.

SDCL 58–11–9.5 is a difference of the limits statute. It clearly limits the insured's UIM recovery to the difference between the UIM policy limits less the amount paid by the liability insurer of the tort-feasor. Here, the combined liability coverage of the Horace Mann policy and the Viking policy is $125,000. Heitmann's Farmland policy provides $100,000 in UIM coverage. Where the liability insurance of the tort-feasor exceeds UIM limits, there is no UIM recovery.

▪ This court has never determined a specific time when the UIM offset may be applied. In *Helmbolt,* this court found a judgment of liability was not a precondition to any payment under a UIM policy. *Helmbolt,* 404 N.W.2d at 59–60 (judgment of liability not a prerequisite to insurers good faith duty to settle underinsured claim). To encourage pre-trial settlement, we deliberately left open the question of when offset may be applied. "Thus, the avenue for settlement of these cases out of

court remains open." *Helmbolt,* 404 N.W.2d at 59.

We agree with the reasoning of the Minnesota Supreme Court in interpreting its difference of the limits statute:

> In summary, then, the amount recoverable under UIM coverage is not a matter of timing; the limit of UIM coverage is not dependent on whether the UIM claim is made before or after the UIM insured has disposed of his or her claim against the tortfeasor. We hold that the maximum liability of the insurer with respect to underinsured motorist coverage is the lesser of the difference between the limits of UIM coverage set out in the policy declarations or schedules and the amount which has been paid or will be paid to the insured by or for the tortfeasor or tortfeasors, or the amount of damages sustained but not recovered.

*Broton v. Western National Mutual Insurance Company,* 428 N.W.2d 85, 90 (Minn.1988).

Thus, the issue is not a matter of timing but a question of whether UIM coverage is available. Here, the liability insurance proceeds available from the tort-feasor exceed the UIM policy limits. Until the Heitmanns show the liability insurance proceeds are less than $100,000, there is no UIM available.

### II.

Heitmann claims prejudgment interest under SDCL 21–1–11 and attorneys fees and costs under SDCL 58–12–3, claiming Farmland's conduct was vexatious and without reasonable cause. As this case is before us on an appeal from summary judgment, there are no findings of fact from the trial court below. As counsel for both parties agreed at oral argument, the above issues cannot be decided by this court when there are no factual determinations from the trial court below.

We affirm the trial court's grant of summary judgment.

SABERS, J., concurs.

AMUNDSON, J., concurs specially.

MILLER, C.J., and HENDERSON, J., dissent.

AMUNDSON, Justice (concurring specially).

The legislature in South Dakota has decided that any liability policy issued or delivered in South Dakota is to provide underinsured motorist coverage and this required coverage is not to exceed $100,000 per person for bodily injury or death in any one accident, $300,000 for bodily injury or death of two or more persons in any one accident. SDCL 58–11–9.4. Under this statute, an insured can request additional coverage. The record in this case does not disclose such a request having been made by the plaintiff/insured. In conjunction with this required coverage, the legislature has also provided that the maximum amount an insured can recover under same is the difference between the tort-feasor's liability limits and the insured's underinsured coverage limit. SDCL 58–11–9.5.

Under the definition contained in Farmland's policy, a person purchasing the underinsurance coverage might reasonably believe he/she is buying protection in any situation where the tort-feasor's liability coverage is less than the damages the insured is entitled to recover. Under the policy adopted for the type of mandated coverage in South Dakota, the existence of damages in excess of the tort-feasor's liability limits does not automatically mean underinsured coverage is available. If the tort-feasor has liability coverage with limits equal to or greater than the limits of the injured party's underinsured coverage, then the injured party has no underinsured benefits available even if his damages far exceed the tort-feasor's liability limits. An injured party can receive underinsured benefits only when his damages and limits of underinsurance coverage exceed the tort-feasor's liability limits. It is certainly understandable that a lay person purchasing this type of coverage would think that they had not received the coverage they thought they were purchasing. It is highly unlikely that the majority of individuals purchasing this type of coverage read the applicable statutes or, if so, would understand them prior to purchasing insurance coverage.

In this case, plaintiff has made a claim for these benefits prior to making a claim against the tort-feasor. In *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 422 (Minn.1988), the Minnesota Supreme Court held: "Underinsured motorist coverage is not an alternative to liability coverage. This is not some optional protection which an insured party can chose in lieu of asserting a claim against an insured tort feasor."

The plaintiff certainly appears to be pursuing an alternative coverage theory in this case and I cannot agree that there is such coverage available under the mandated underinsured policy in South Dakota.

MILLER, Chief Justice (dissenting).

It is my view that Heitmann's policy is not inconsistent or contradictory to the statutes. Rather, the policy is more favorable to Heitmann in this particular provision. My research has disclosed no case in which this Court has held that an explicit provision of a policy which is more favorable to the insured than an incorporated statutory provision, is "in conflict with, or repugnant to, statutory provisions[.]" I dissent from the majority writing which in effect does so now.

I agree with the majority in its adoption of the trial court's holding which cited *Alexander v. Home Ins. Co.*, 53 S.D. 305, 308, 220 N.W. 525, 526 (1928) which in turn relied on *Epiphany Roman Catholic Church v. German Ins. Co.*, 16 S.D. 17, 20, 91 N.W. 332, 333 (1902): "In South Dakota insurance statutes in force at the time an insurance contract is entered into become a part of the contract as if the statute had been incorporated into the policy itself." In an opinion authorized by Justice Wuest, we recently repeated the often-stated rule that "where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted." *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990). Clearly, Heit-

mann's explicit policy provision is more favorable to Heitmann than the incorporated statutory provision and must be given the more favorable interpretation.

The South Dakota Legislature has not defined "underinsured motor vehicle." However, Farmland's contract of insurance defines that term as follows:

"Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the insured is legally entitled to recover as damages.

Farmland's definition *is misleading* to purchasers of Underinsured Motor Vehicle (UIM) coverage, such as Heitmann, in that they are lead into thinking they are purchasing a type of protection which in fact they are not getting. Heitmann should get the benefit of the bargain. As noted by another court, under this definition's language,

a purchaser of UIM coverage might reasonably believe he or she is gaining protection against any case where the tortfeasor's liability coverage is insufficient to compensate fully for all damages. Yet, the existence of damages in excess of the tortfeasor's liability limits does not, as we hold today, guarantee availability of the added protection of UIM benefits.... Only where the limits of the UIM coverage (as well as damages) exceed the tortfeasor's liability limits will UIM benefits be available.

*Broton v. Western Nat. Mut. Ins.,* 428 N.W.2d 85, 90 (Minn.1988) (Yetka, J., concurring specially). The result of the majority's writing today is as Justice Yetka observed: "Although a particular vehicle may fall within this definition [of 'underinsured motor vehicle'], and a person injured by such a vehicle may have purchased UIM coverage, there is no guarantee UIM benefits will be available." *Id.*

As Justice Henderson notes in his dissent, Farmland "[I]nsurance [C]ompany is a professional with professional staff and lawyers to support it and to draft its policy." Insurance companies draft misleading policy provisions at their peril. Insurance purchasers must get the type of protection which they reasonably think they are purchasing.

This court has said: "The provisions of the uninsured motorist statutes are construed liberally in favor of coverage." *Clark v. Regent Ins. Co.,* 270 N.W.2d 26, 29 (S.D.1978). So it is with UIM statutes. I believe the purpose of UIM coverage is to make a victim whole to the extent his/her policy provides, as long as the policy is not less favorable than otherwise required by statute. Heitmann's policy is not less favorable than otherwise required.

HENDERSON, Justice (dissenting).

A legal obligation exists unto Heitmann. It is not being enforced in this Court. Therefore, I respectfully dissent.

Given the strong public policy in South Dakota supporting the rights of parties to contract, as well as the rights of innocent accident victims to be compensated, the terms and conditions of the Farmland policy, issued to the Heitmanns, providing broader UIM coverage should apply—rather than minimum coverage required by SDCL 58–11–9.5.

Here, the insurer claims it issued a policy to Heitmann providing less coverage than the minimum UIM coverage required by SDCL 58–11–9.5. Farmland seeks to take advantage of its own wrong, namely that it issued, in essence, a defective policy which provided no UIM coverage whatsoever and, therefore, SDCL 58–11–9.5 should be incorporated into the contract as a matter of law. During oral argument of this case at Black Hills State University, where this Court convened, Mr. Lon Kouri, Attorney, of Sioux Falls, South Dakota, representing Farmland, under the questioning of this writer, admitted it was the insurance company's fault that a rider was not put on the policy. This insurance company should not be able to profit by its own wrong. As expressed by the renowned jurist, Benjamin Cardozo, "No man should profit from his own inequity or take advantage of his

own wrong." *The Nature of The Judicial Process,* p. 41 (1921). *See also Conway v. Conway,* 487 N.W.2d 21, 24 (S.D.1992); *Johnson v. Kolman,* 412 N.W.2d 109, 116 (S.D.1987) (Henderson, J., dissenting).

It should be pointed out that both parties, during open court, expressed that there were no disputed facts. Both parties moved for summary judgment. Summary judgment should be affirmed if there are no genuine issues of material facts and the trial court has correctly decided the legal issues. We have, in my opinion, this single legal issue decided incorrectly, namely that a state statute, SDCL 58–11–9.5 supersedes the more favorable terms and conditions in the Farmland policy *or* that the said statute operates to defeat the entitlement of Laura Heitmann's family to UIM benefits.

Contracts of insurance are to be "construed liberally in favor of the insured and strictly against the insurer." *Prokop v. North Star Mutual Ins. Co.,* 457 N.W.2d 862 (S.D.1990). Heitmann is entitled to rely upon the plain language of the declaration and policy provisions. If Farmland had its theoretical stance prevail, this Court would be imposing policy terms totally contrary to the express language of the policy terms and provisions that Heitmann bargained for; that does not make good sense and it is not fair to this citizen. The *declarations page* of the policy, in effect on the date of the accident, *explicitly provides for UIM benefits in the amount of $100,000 per person, $300,000 per accident.* Additionally, it requires Heitmann to pay an additional amount in his insurance premium for UIM coverage. The terms of the UIM coverage are specified within the policy itself, which states that UIM coverage is provided up to the "full amount the insured is legally entitled to recover as damages." Both parties agree that the policy issued to Heitmann did not contain an endorsement requiring UIM benefits to be offset from available liability insurance benefits. Without the limiting offset endorsement, the insurance policy issued to Heitmann provides UIM coverage to the full extent of the insured's uncompensated damages, subject only to the $100,000/$300,000 policy limits. Therefore,

the terms and conditions of the policy, without any limiting offset language, provide for UIM coverage that is broader than the minimum UIM coverage required by SDCL 58–11–9.5.

I cannot understand why this Court would impose a contract by law—when the parties have a contract in existence between them. My authorities follow. If the reader reviews SDCL 58–11–9.5, it becomes obvious that our state statute expressly supports the rights of parties to contract for UIM coverage in excess of that amount required by statute. If, in fact, a valid express contract exists, which establishes the rights of the contracting parties, no implied contract will be or need be inferred. *Weller v. Spring Creek Resort, Inc.,* 477 N.W.2d 839 (S.D.1991). *Weller* was written by Justice Amundson and concurred in by Chief Justice Miller and Justice Sabers. This Court has recognized such a rule of law going back three decades. *See Thurston v. Cedric Sanders Company,* 80 S.D. 426, 125 N.W.2d 496 (1963). The law will not imply a contract where a contract is already in existence between the parties. There is a presumption that the parties to a contract know and understand its contents, and that the contract embodies and expresses the true intention of the parties. *Ryken v. Blumer,* 307 N.W.2d 865, 868 (S.D.1981).

Another paramount provision of SDCL 58–11–9.5 which the majority fails to give importance to is that UIM coverage is "subject *to the terms and conditions [of such underinsured motorist coverage]."* People have the right, in other words, to freely contract. It is true that said statute provides that UIM coverage is to be offset against the amount of the liability coverage paid, but nonetheless, it has the very important introductory phrase, which I believe is a clear message by our State Legislature, to adopt a policy of the freedom to contract by our citizens. In interpreting legislation, the Supreme Court should not presume that the Legislature intended an absurd result. *Helmbolt v. LeMars Mut. Ins. Co., Inc.,* 404 N.W.2d 55, 59 (S.D.1987). Obviously, an insurance policy must be

subject to a reasonable interpretation and not one which amounts to an absurdity. *Id.* at 60.

Heitmann had a right to rely upon the policy (not upon a state statute which the insurance company now uses as a shield to defeat its contract). Heitmann is a lay person; insurance company is a professional with professional staff and lawyers to support it and to draft its policy. As depicted in *Utah Property & Cas. v. United Serv. Auto.*, 230 Cal.App.3d 1010, 1021, 281 Cal.Rptr. 917, 923 (3rd Dist.1991):

> *Laypersons cannot be expected to know of statutory limitations or exclusions or coverage not contained in their insurance policies.* Trusting the language of their policies, laypersons will not seek coverage they think they have. Thus, should statutes be allowed to narrow or limit coverage otherwise provided by a policy, the net result would be unanticipated gaps in coverage or, ultimately, a failure of financial responsibility.... Moreover, this conclusion is not unfair to insurance companies because, unlike laypersons, insurance companies are fully capable of knowing about statutory restrictions on coverage and of incorporating the restrictions in the language of *their policies.* (Emphasis supplied mine).

I subscribe to the reasoning and holding in *Capelli v. Twin City Fire Ins. Co.*, 209 N.J.Super. 552, 508 A.2d 269 (1986) and would apply that holding to the case at bar. There, the *Capelli* court refused to apply a statutory amendment to limit recovery of personal injury protection benefits. It rationalized:

> "*An insurer is bound by the terms of its contract despite the fact that the coverage thereby provided was more extensive than required by statute....*"

Here the carrier sold to the deceased a policy of insurance which provided and spelled out benefits more liberal than that which is now contained or was then contained in the amended statute. It

very well may be that the carrier had neglected to amend its policy to conform to the statute or to attach to it a rider indicating that the language is superseded by the language of the statute, and it charged a premium for the option that it sold. The carrier should not now be heard to complain of its liberality or its neglect which resulted in liberality on the basis that it would be contrary to public policy and the intent of the legislature to limit the exposure of the carriers under the no fault law.

508 A.2d at 271 (citations omitted). (Emphasis supplied mine).

Did this insurance company ever clearly communicate to the insured that a policy exclusion existed? No. The terms and conditions of this policy of insurance are more favorable to the insured than a statutory provision.* If by a fault or wrong of the insurance company (as here), an uncertainty or ambiguity is created, it should be construed most strongly against the insurer and in favor of the insured. *See McGriff v. United States Fire Ins. Co.*, 436 N.W.2d 859, 862 (S.D.1989). Heitmann had a right to rely on the terms and conditions of the policy. When construing a contract, this Court must ascertain and give effect to the intention of the parties. *American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D.1990). We should honor the contract. SDCL 58–11–9.5 (1990) begins with this language: "*Subject to the terms and conditions of such underinsured motorist coverage, ...*" Because of a computer error, occasioned by the insured, a UIM schedule was not included in the policy and delivered to Heitmann. Yet, various portions of the policy referred to UIM coverage. So—the computer error by Farmland is their escape hatch to get out from under the contract. Such advocacy should not pass muster under the authorities cited above.

Ham and eggs. That great old American fare makes me think of a conceptual differ-

---

* Insurer relied upon an unsigned affidavit of Wessel, one of its employees. It was attached to its motion documents. It is a nullity. Wessel referred to policy provisions requiring exhaus- tion and offset of the limits of applicable liability policies. Later, insurer conceded that the policy did not contain either an offset requirement or exhaustion clause.

ence: Committed and involved. It is apropos in this factual scenario. There is a difference: The hog is committed (his obligation of commitment is beyond question) and the hen is involved. Here, the insurance company only wants to be involved (take the premium) but not committed (will not pay). It took the premium and issued the policy. It is committed, just like the hog. Unfortunately, the Heitmann estate is involved with this insurance company. It is the unfortunate hen.

State Legislature is committed. Committed to supporting the rights of innocent accident victims to be compensated. Therefore, the involved hen is entitled to its just due.